ACCEPTED
01-15-00352-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/29/2015 1:38:52 PM
CHRISTOPHER PRINE
CLERK

NO. 1-15-00352-CV

_____

IN THE
FIRST COURT OF APPEALS
AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/29/2015 1:38:52 PM
CHRISTOPHER A. PRINE
Clerk

_____

PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU,
Appellants

VS.

MANH HOANG and DUNG LE,
Appellees

_____

Appealed from the 55th Judicial District Court of
Harris County, Texas

_____

**APPELLANTS' BRIEF**

_____

TOM RORIE
State Bar No. 17238000
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099

ATTORNEY FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Rule 38.1(a) of the TEXAS RULES OF APPELLATE PROCEDURE, Appellants Phap V. Nguyen, Andy Ngo, and Dung T. Vu provide the following list of all parties, and the names and addresses of all counsel:

Appellants:        Phap V. Nguyen
Andy Ngo
Dung T. Vu

Counsel:        Tom Rorie
Attorney at Law
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099
Email: trorie@sbcglobal.net

Appellees:        Manh Hoang
Dung Le

Counsel:        Scott K. Bui
Robert B. Pham
Bui, Pham & Nhan, PLLC
3921 Ocee
Houston, TX 77063
(713) 783-2466
FAX (713) 783-0787
email: sbui@buinhanlaw.com

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

Points of Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point of Error No. 1:

There is insufficient evidence as a matter of law to establish a partnership between the parties; therefore, there is no liability for breach of a partnership agreement.

Point of Error No. 2:

The evidence is legally insufficient to establish that appellants breached a contract with appellees.

Point of Error No. 3:

The evidence is insufficient to show any damages for breach of a partnership agreement.

Point of Error No. 4:

The evidence is insufficient to show any damages for breach of a contract.

Point of Error No. 5:

The trial court erred in awarding judgment for damages for both breach of a partnership agreement and breach of contract when both causes of action arose from the same facts or events.

Point of Error No. 6:

> The evidence is insufficient to establish any liability by Appellee Dung Vu because there is insufficient evidence that she engaged in any conduct for which Appellees complain.

Arguments and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Point of Error No. 1 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      Receipt or Right to Receive a Share of Profits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Expression of Intent to Be Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Right to Control the Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      Sharing or Agreeing to Share in Any Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      Contributing or Agreeing to Contribute Money or Property to the Business . . . . . . . . . 14

      Summary: The Totality of the Evidence Shows that Appellees were not
      Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Point of Error No. 2 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Point of Error No. 3 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Point of Error No. 4 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      Payment of 20% of Net Profits to Appellants a Breach of a Partnership
      Agreement or Contract? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      Is Withholding Money from a Distribution of Profits to pay Federal Taxes a
      Breach of a Partnership Agreement Or Contract? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      Was It a Breach of a Partnership Agreement or Breach of Contract to Divide
      Proceeds between Appellant Le and Tuan Ngo Rather than Pay All the Proceeds
      to Appellee Le? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Point of Error No. 5 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Point of Error No. 6 Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## INDEX OF AUTHORITIES

Cases                                                                                                    Page

*Baldwin v. Smith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
586 S.W.2d 624 (Tex.Civ.App.–Tyler 1979), reversed on other grounds 611 S.W.2d 611
(Tex.1980)

*Big Easy Cajun Corp. v. Dallas Galleria Ltd.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
293 S.W.3d 345 (Tex.App.–Dallas 2009, pet.rev.den'd.)

*Black Lake Pipe Line Company v. Union Construction Company* . . . . . . . . . . . . . . . . . . . . . . 19
538 S.W.2d 80 (Tex. 1976)

*Brown v. Keel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
2012 Tex.App. LEXIS 1854 (Tex.App.–Houston [1st] 2012, no writ hist.)

*Cintrin Holdings, LLC v. Minnis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
2013 Tex.App. LEXIS 5723 (Tex.App.–Houston [14th] 2013, pet.rev.den'd.)

*Crown Life Ins. v. Casteel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
22 S.W.3d 378 (Tex. 2000)

*Gannon v. Baker* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
830 S.W.2d 706 (Tex.App.–Houston (1st] 1992, writ den'd)

*Greenberg Traurig, LLP v. National American Insurance Company* . . . . . . . . . . . . . . . . . . . . 23
448 S.W.3d 115 (Tex.App.–Houston [14th] 2014)

*Guerrero v. Salinas* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
2006 Tex.App. LEXIS 8562 (Tex.App.–Corpus Christi 2006, no pet.)

*Hoss v. Alardin* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
338 S.W.3d 635 (Tex.App.–Dallas 2011, no pet.)

*Ingram v. Deere* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,7,8,9
288 S.W.3d 886 (Tex. 2009)

*Knowles v. Wright* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
288 S.W.3d 136 (Tex.App.–Houston [1st] 2009, pet.rev.dism'd.)

*Malone v. Patel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
397 S.W.3d 658 (Tex.App.–Houston [1st] 2012, pet.rev.den'd.)

*Murphy v. Canion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
797 S.W.2d 944 (Tex.App.–Houston [14th] 1990, no writ hist.)

*Murphy v. Seabarge, Ltd.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,25
868 S.W.2d 929 (Tex.App.–Houston [14th] 1994, aff'd.)

*Prime Prods, Inc. v. S.S.I. Plastics, Inc.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
97 S.W.3d 631 (Tex.App.–Houston [1st] 2002, pet. denied)

*Rankin v. Naftalis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
557 S.W.3d 940 (Tex.1977)

*Reagan v. Lyberger* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
156 S.W.3d 925, 928 (Tex.App.–Dallas 2005, no pet.)

*Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mt. Ranch, Inc.* . . . . . . . . . . . . . 23
2014 Tex.App. LEXIS 13417 (Tex.App.–San Antonio 2014, rev'd. in part; aff'd. as modified)

*Sewing v. Bowman* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7,10
371 S.W.3d 321 (Tex.App.–Houston [1st] 2012, pet.rev.dism'd.)

*Southern County Mutual Insurance Company v. First Bank & Trust* . . . . . . . . . . . . . . . . . . . . . 24
750 S.W.2d 170 (Tex. 1988)

*Stewart Title Guaranty Co. v. Sterling* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
822 S.W.2d 1 (Tex. 1991)

*Tierra Sol Joint Venture v. City of El Paso* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
155 S.W.3d 503 (Tex.App.–El Paso 2004, pet.den'd.)

*Truly v. Austin* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
744 S.W.2d 934 (Tex. 1988)

*Vortt Exploration Company v. Chevron* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
787 S.W.2d 942 (Tex. 1990)

*Westside Wrecker Service v. Skafi* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7
361 S.W.3d 153 (Tex.App.–Houston [1st] 2011, pet.rev.den'd.)

Codes, Rules and Statutes                                                      Page

TEXAS BUSINESS ORGANIZATION CODE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Texas Deceptive Trade Practices Act, TEXAS BUSINESS AND COMMERCE CODE § 17.41, *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEXAS FAMILY CODE § 3.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TEXAS FAMILY CODE § 3.201(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Texas Revised Partnership Act (now repealed) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

TEXAS RULE OF APPELLATE PROCEDURE 9.4(i)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

TEXAS RULES OF APPELLATE PROCEDURE, Rule 38.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

## STATEMENT OF THE CASE

Appellees brought suit contending that Appellants had breached a partnership agreement with them, had breached a contract with them, and had committed fraud. They sought actual damages for the breaches of the partnership agreement and contract, and exemplary damages as well.

At the close of Appellee's evidence Appellants moved for an instructed verdict on the following claims :

1.  Those against Appellant Dung Vu for the reason that there was no evidence that she had participated in any decision about which Appellees complained, that she made any representation, withheld any information, or assumed any duty to them;

2.  Those based on a theory of partnership because there was no evidence of an agreement to share losses or of joint management and control;

3.  Those based on a theory of fraud because there was no evidence of any representation by Appellants that was false.

The trial judge granted the motion as to the fraud theory, but otherwise denied the motion. (RR Vol. 151-163).

In the Court's Charge Conference Appellants objected the charge as follows:

1.  Again objected to submitting the issues as to Appellant Dung Vu because of a lack of any evidence that she participated in any decision that Appellees complained of;

2.  Objected to the submission of a damages issue for breach of partnership because there is no evidence of the value of the partnership;

3.  Objected to the submission of partnership issues without an adequate definition of

what constitutes "control."

The jury found that a partnership existed and that Appellants had breached a duty of loyalty. It awarded damages to both Appellees for breach of that duty. The jury also found a breach of contract and awarded damages for that breach. The jury did not award exemplary damages.

After return of the jury verdict Appellants filed motions to disregard jury findings and for a judgment notwithstanding the jury verdict. That motion was denied. The court signed a judgment for both Appellees for the damages found by the jury and for pre-judgment interest.

Appellants then filed a motion for new trial, which was denied. This appeal followed.

**STATEMENT OF FACTS**

All the parties to this case are members of Vietnamese families who have a strong sense of family and a tradition of helping each other. Appellants were interested in some type of business in which they could prosper through diligent work, and learned through friends that one could make a living by owning and operating a chicken farm, raising chickens for a chicken producer. They worked on chicken farms to learn the business, and then decided to go into business themselves.

Appellants learned of a farm in Georgia which was for sale. They were approved as a grower by the chicken producer which provided the chickens for the farm, Sanderson Farms.[1]

With a grower contract in hand Appellants were able to secure a loan to purchase the farm they found. But they needed additional funding. So they contacted Appellees and other family members and offered them the opportunity to invest in exchange for the right to receive a proportionate part of any profits made.

Appellee Manh Hoang invested $80,000. Appellee Dung Le, together with her live-in boyfriend Tuan Ngo, invested $50,000. Other family members invested as did Appellants themselves. Appellants secured a loan from a bank in their names only for approximately one and one-half million dollars.

With the needed funds in hand Appellants then closed on the purchase of the Georgia chicken farm and Sanderson placed chickens on the farm. Appellants and Appellant Nguyen's family all lived in what was referred to as a "garage." The farm had only six chicken houses which limited its income, and times were hard. Appellant Vu, the wife of Appellant Nguyen, worked in her design

---

[1]The Reporter's Record refers to the producer as "Anderson Farms," but the correct name is Sanderson Farms, and that name will used in this brief.

business in New Orleans and helped pay the expenses of the farm with her income. Appellants were paying themselves a minimal draw or salary as laborers, as they worked in the houses along with their employees. They knew that they needed to expand the farm and Sanderson authorized them to add two additional houses. None of the investors had any money to contribute for those houses, so Appellants drew no wages for a year and used the wages they would normally have paid themselves to build two additional houses. All the investors benefitted from the additional houses.

After operating the Georgia farm for some time Appellants decided they would like to move to Texas, where most of their family members were located. They decided to sell the Georgia farm, and told the investors of their plans. They sold the farm for a profit, deferred the capital gains taxes on the sale, and then moved to Texas.

While staying in Houston Appellants began searching for some land in central Texas that could be approved by Sanderson Farms for a chicken farm. They spent approximately a year searching for land in several counties and got approval from Sanderson for a tract in Robertson County. Appellants secured a loan, in their names only, for approximately four and one-half million dollars based on their contract with Sanderson, purchased a tract in Robertson County, and built a chicken farm with 16 houses. Appellants secured a contractor for the houses, had a water well drilled, utilities installed, and provided all management of the farm as well as working on the farm. Appellants received no income for approximately a year while they were searching for the land and constructing the chicken farm in Texas.

Appellants learned that Sanderson would provide them chickens for eight additional houses. Appellant Nguyen personally borrowed $400,000 to secure the funds to build those houses. All the investors benefitted from the income earned by those houses, although none of the other investors

had any liability for the loan.

Appellants successfully operated the farm in Texas. They worked hard. According to Appellee Vu her husband worked from 6:30 a.m. to 9:00 or 10:00 p.m. each day. Appellee Hoang worked as a laborer in the farm, but was "fired" by Appellants because of his poor work habits and one event in which he left the farm unattended when it was his duty to be present. Appellee Le never worked on either of the farms and seldom was present. Appellants decided to sell the farm, in part because they no longer wanted to continue any type of business relationship with Appellees.

Appellants then offered the farm for sale, sold it, and several months later called a meeting with the investors, including Appellees, to distribute the profits made. Appellees insisted on being paid in cash, and in order to protect themselves Appellants recorded the meeting on a video camera. At the meeting Appellant Ngo provided the investors with a worksheet in which he showed the profits made and any deductions from profits. At trial a certified public accountant testified that in his opinion the worksheet was a reasonable and fair accounting of the chicken farm business.

The worksheet that Appellants provided the investors showed that Appellants were withholding from the distribution of profits 20% of those profits as compensation to them for their services and contributions to the venture. They also deducted the amount of capital gains taxes that Appellant Ngo calculated would be due and the taxes on ordinary income they would owe due to depreciation recapture and withheld those amounts from the distribution. While the other investors did not object, Appellees objected to both of these deductions. Appellee Le also objected to the division of the distribution of profits between her and Tuan Ngo. Appellees took the money despite their objections.

After all the business affairs of the farm were completed, Appellants distributed a final

additional amount to each investor out of the funds accumulated. The final tally on the investments of Appellees was that Hoang invested $80,000 and realized about $400,000 from his investment while Le invested $50,000 and Appellants paid back over $200,000.

———

# SUMMARY OF THE ARGUMENT

The judgment by the trial court cannot stand because there is insufficient evidence to support the jury's finding that a partnership was created between the parties. The totality of the evidence shows no competent evidence to create a partnership, no agreement to share losses or be liable to third parties for debts of the business, and a complete lack of control, the ability to make "executive decisions" by Appellees.

There is also legally insufficient evidence of a breach of a partnership agreement or breach of contract. Any payment by Appellants to themselves for their uncompensated services over four years are compensable through the theory of *quantum meruit*. There is no express agreement for their compensation for those services.

The withholding of funds to pay the Internal Revenue Service on the profits earned cannot be a basis for a breach of a partnership agreement or contract between the parties for the reason that a party has no legal right to compel another to violate the laws that apply to the transaction.

The division of the payment of proceeds to Appellant Le and her former boyfriend, Tuan Ngo, is not a breach of an implied contract to pay only her because the evidence is insufficient to show any such implied contract. That division is likewise not a breach of any express contract to pay only Appellant Le because there is no evidence of any express contract.

The "contract" claim and "partnership" claim of Appellees are in fact the same. The only contract was the same agreement Appellees call an agreement to be partners. The damages that Appellee claim arise out of the same operative facts. Therefore, the trial court erred in awarding what are the same damages twice, which is not permitted because of the one satisfaction rule.

The evidence is insufficient to show the participation by Appellant Vu in any act or omission which was a cause of injury or damages to Appellants, and it was error for the trial court to award a judgment against her as well as against Appellants Nguyen and Ngo.

## POINTS OF ERROR

POINT OF ERROR NO. 1:

> THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO ESTABLISH A PARTNERSHIP BETWEEN THE PARTIES; THEREFORE, THERE IS NO LIABILITY FOR BREACH OF A PARTNERSHIP AGREEMENT.

POINT OF ERROR NO. 2:

> THE EVIDENCE IS LEGALLY INSUFFICIENT TO ESTABLISH THAT APPELLANTS BREACHED A CONTRACT WITH APPELLEES.

POINT OF ERROR NO. 3:

> THE EVIDENCE IS INSUFFICIENT TO SHOW ANY DAMAGES FOR BREACH OF A PARTNERSHIP AGREEMENT.

POINT OF ERROR NO. 4:

> THE EVIDENCE IS INSUFFICIENT TO SHOW ANY DAMAGES FOR BREACH OF A CONTRACT.

POINT OF ERROR NO. 5:

> THE TRIAL COURT ERRED IN AWARDING JUDGMENT FOR DAMAGES FOR BOTH BREACH OF A PARTNERSHIP AGREEMENT AND BREACH OF CONTRACT WHEN BOTH CAUSES OF ACTION AROSE FROM THE SAME FACTS OR EVENTS.

POINT OF ERROR NO. 6:

> THE EVIDENCE IS INSUFFICIENT TO ESTABLISH ANY LIABILITY BY APPELLEE DUNG VU BECAUSE THERE IS INSUFFICIENT EVIDENCE THAT SHE ENGAGED IN ANY CONDUCT FOR WHICH APPELLEES COMPLAIN.

## ARGUMENTS AND AUTHORITIES

Most people who receive a return of several times their investment without any effort on their part are grateful. Appellee Manh Hoang invested $80,000 with Appellants in their purchase, operation and sale of chicken farms in Georgia and Texas, and received in return approximately $400,000. Appellee Dung Le invested $50,000 and received in return approximately $200,000. But instead of gratitude, they felt resentment.

It bothered them that Appellants received some income in which they did not share. Oblivious of the critical importance of management in making a successful business venture, or simply resentful that Appellants received money when they did not, they objected when Appellants told them they were taking part of the profits earned as their compensation for several years of work, risk, and sacrifice. Appellees brought suit because they wanted all the profits distributed to the investors strictly in accordance with their monetary contribution.

Appellees also objected when Appellants withheld funds from the distribution to the investors to pay the Internal Revenue Service for capital gains taxes and taxes they expected to owe because of depreciation recapture. To Appellees payment of taxes was abstract or hypothetical, and they would worry about that later, but the money on the table was real, and they wanted all of it distributed.

Appellee Le also complained that Appellants divided the profit on what she called her investment to between her and a brother of Appellant Ngo, Tuan Ngo, who lived with her for several years, including the time that monies were invested to buy each of the chicken farms.

This case is complicated by the absence of any written agreement between the parties. While

2

not explicitly stated at trial, it appears there is a custom among families of Vietnamese descent to consider written agreements either unnecessary or undesirable. Therefore, much of the trial of this case consisted of the parties recounting what each said, or in many cases, their interpretation or understanding of what was said.

The case was submitted to the jury inquiring about two primary causes of action. First, Appellees claimed that a partnership existed, and that Appellants breached that partnership agreement. Second, they claimed that a contract existed between the parties and Appellants breached that contract. As will be shown the contract was actually the same as what Appellees call an agreement to create a partnership. In this case, the "contract" is the same thing as the "partnership."

All the damages found by the jury are based on claims that arose at the same time and from the same event, i.e. when Appellants distributed the proceeds from the chicken house investment. The jury found damages arising from both a breach of partnership and from a breach of contract, but did not award any exemplary damages. There is no way to separate damages arising from a breach of partnership from those arising from a breach of contract, and Appellants will show that the court granted Appellees an impermissible double recovery.

## STANDARD OF REVIEW

This court has already set out the standard of review in a case of this nature, where an appellant attacks jury findings on issues on which he did not have the burden of proof, in *Westside Wrecker Service v. Skafi*, 361 S.W.3d 153 (Tex.App.–Houston [1st] 2011, pet.rev.den'd.), and in *Sewing v. Bowman*, 371 S.W.3d 321 (Tex.App.–Houston [1st] 2012, pet.rev.dism'd.).

Point of Error No. 1 Restated:  THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO ESTABLISH A PARTNERSHIP BETWEEN THE PARTIES; THEREFORE, THERE IS NO LIABILITY FOR BREACH OF A PARTNERSHIP AGREEMENT.

Partnership law in Texas has evolved over the past several years in light of the adoption of the Texas Revised Partnership Act and the later adoption of the TEXAS BUSINESS ORGANIZATION CODE.  None of the parties to this suit have ever argued that the TRPA does not control.  The agreement of the parties was made in 2006 and the last farm was sold in 2010.

Any analysis of a partnership claim must begin with a review of *Ingram v. Deere*, 288 S.W.3d 886 (Tex. 2009).  That case involved a psychiatrist, Deere, who agreed to serve as the medical director of a pain clinic and who claimed that he became a partner with a psychologist, Ingram. Initially they had no written agreement.  Fourteen months later Ingram presented to Deere a "Physician Contractual Employment Agreement" which Deere refused to sign because he contended he was to be a partner.  Deere brought suit claiming he was entitled to damages as a partner.

The Court applied the TRPA, which provides that "an association of two or more persons to carry on a business as owners creates a partnership," and then enunciates the elements of a partnership.  Those elements are:

(1)      receipt or right to receive a share of profits of the business;

(2)      expression of an intent to be partners in the business;

(3)      participation or right to participate in control of the business;

(4)      sharing or agreeing to share:

(A)      losses of the business, or

5

(B)     liability for claims by third parties against the business; and

(5)     contributing or agreeing to contribute money or property to the business.

The elements that control under the TRPA vary somewhat from the common law requirements, as the court noted. *Ingram*, p. 895-896. Instead of requiring proof of all elements, the Court held that a "totality-of-the-circumstances test" would be the measure by which courts would determine the existence of a partnership. If none of the elements exist, then a partnership cannot be created. Conversely, if conclusive evidence on all the factors is found, a partnership exists as a matter of law. This case now before the court falls in between the two ends of the spectrum: there is evidence on some factors and none on others. Each element will be considered in the order listed in *Ingram*.

Receipt or Right to Receive a Share of Profits:

No dispute exists that the parties agreed to share profits. It was uncontradicted that Appellant Ngo contacted his brother, Tuan Ngo, who lived with Appellee Le, and told him if they contributed money toward Appellants' purchase of a chicken farm in Georgia that they would share in any profits made. Appellants made the same offer to Appellee Hoang. There is no dispute that Appellee Hoang contributed $80,000 and that he received in return approximately $400,000. There is a disagreement as to whether Appellee Le alone, or she together with Tuan Ngo, made a contribution, but no dispute that a contribution of $50,000 was made which resulted in a return of over $200,000.

Expression of Intent to Be Partners:

The expression by the parties of their intent to be partners can be shown in several ways. Some examples noted by the Court in *Ingram* are "statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership

6

agreement." *Ingram,* p. 900. Another indication might be a party referring to another as his partner in a conversation with a third party. An example of such a reference to another as his "partner" is found in *Cintrin Holdings, LLC v. Minnis*, 2013 Tex.App. LEXIS 5723 (Tex.App.–Houston [14th] 2013, pet.rev.den'd.).

There must be some evidence that both parties expressed their intent to be partners. *Reagan v. Lyberger*, 156 S.W.3d 925, 928 (Tex.App.–Dallas 2005, no pet.); *Hoss v. Alardin*, 338 S.W.3d 635, 641 (Tex.App.–Dallas 2011, no pet.); *Brown v. Keel*, 2012 Tex.App. LEXIS 1854 (Tex.App.–Houston [1st] 2012, no writ hist.).

The court must inquire separately whether there exists evidence of an intent to be partners, and a court should "only consider evidence not specifically probative of the other factors." *Sewing v. Bowman,* 371 S.W.3d 321, 333-334 (Tex.App.–Houston [1st] 2012, pet.rev.dism'd.), citing *Ingram*. Thus the court can only look to the expressions of intent by the parties or to their representations to third parties.

This case involves a purely oral agreement, which creates other issues. The terms of an oral contract must be "clear, certain, and definite." *Knowles v. Wright*, 288 S.W.3d 136 (Tex.App.–Houston [1st] 2009, pet.rev.dism'd.); *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex.App.–Houston (1st] 1992, writ den'd). Reliance on what one party says does not establish what both agreed to. There must be evidence that "both parties expressed their intent to be partners." *Hoss v. Alardin,* p. 644. The opinion of a lay witness that a partnership has been created is not competent evidence of a partnership. *Westside Wrecker Service v. Skafi*, 361 S.W.3d 153, 169 (Tex.App.–Houston [1st] 2011, no writ hist.).

7

There is absolutely no documentary evidence of a partnership in this case. No document ever referred to any of the parties as partners. All documents executed in connection with the purchase, improvement, operation and sale of the two chicken farms show Appellants only as the owners. All loan documents executed with financial institutions were executed solely in Appellants' names. All contracts and correspondence with the chicken producer, Sanderson Farms, name Appellants alone as owners. No bank account or record showed or referred to the names of Appellees, but instead showed Appellants as owners of the account.

There is likewise no testimony by any third party that any of the parties represented to them that they were partners nor is there is any evidence that any of the partners referred to themselves as partners.

The only evidence in this case of an intent to be partners is by Appellee Hoang. He testified that "we all agreed we are owners." (RR Vol. 2, p. 118). Yet there is no evidence of that intent being expressed to anyone any time, to a lender, contractor, chicken producer, employee, or to anyone. Another portion of Appellee Hoang's testimony really says what the parties agreed to. His counsel asked him if he wanted to be a "partner" and his response was "we agreed at the first time if we make it, everybody will make it." (RR Vol. 3, p.126). That testimony is consistent with Appellants'. They testified that if they made profits all would share in them. But an agreement to share profits alone is not evidence of an intent to be partners. Appellant Ngo made the distinction when he said Appellees were not owners or partners, but that "they invest–what I call is they put in money in there to earn the profit." (RR Vol. 3, p. 27).

The court noted in *Ingram* that "[t]he Legislature does not indicate that it intended to spring surprise or accidental partnerships on independent business persons" (p. 898). The intent to be

8

partners must be mutual, and the evidence in this case lacks evidence of mutual intent to be partners.

Right to Control the Business:

The right to control is generally considered one of the most important of the factors considered in evaluating whether a partnership existed. *Big Easy Cajun Corp. v. Dallas Galleria Ltd.*, 293 S.W.3d 345, 348 (Tex.App.–Dallas 2009, pet.rev.den'd.). The court in *Ingram* said that the right involves "the right to make executive decisions." So a review of the evidence in this case of the right of the parties to make those "executive decisions" is in order.

One of the first "executive decisions" a party makes is controlling access to the business's books and records. In *Ingram* the court cited *Tierra Sol Joint Venture v. City of El Paso*, 155 S.W.3d 503 (Tex.App.–El Paso 2004, pet.den'd.), as holding that a party cannot be in control of a business if he does not have control over and access to its books. In this case, there is no evidence that Appellees had any control over the books and records of the chicken farms. Instead, Appellants kept the books themselves and were the only parties who even knew whether the chicken farms had made a profit.[2]

Another of the "executive decisions" made by those who are partners is to have the right to write checks on the business checking account. *Guerrero v. Salinas*, 2006 Tex.App. LEXIS 8562 (Tex.App.–Corpus Christi 2006, no pet.), cited by the court in *Ingram.* Appellees failed to show they even knew where Appellants had a bank account, much less had access to it.

There is some evidence that Nguyen and Ngo talked to Hoang and Le on a few occasions about

---

[2] When Appellees came to the final distribution of profits they had no idea of what would be distributed or what profit, if any, was made from the chicken farms. Appellee Hoang testified that he knew the farm was paid when batches of chicken were sold, but those payments are not income. Income is what is left after payment of fixed expenses such as servicing the debt on the farm and variable expenses such as labor costs, the cost of utilities, costs of upkeep and management, etc. *Deere,* p. 898. Since Appellee Hoang had no knowledge of the amount of those expenses he had no knowledge of the income from the farms.

9

their plans, i.e. deciding to sell the farm in Georgia, the decision to buy property and build a farm in Robertson County in Texas, but the decision to sell the Texas farm and distribute the proceeds was made by Appellants alone. (RR Vol. 3, p. 186-187). In *Malone v. Patel*, 397 S.W.3d 658, 676 (Tex.App.–Houston [1st] 2012, pet.rev.den'd.), this court addressed the claim by one party that he had "control" because the other discussed with him decisions that were made, and the financial condition of the business, and concluded that this was no evidence that he actually made any executive decisions and had control. To phrase it differently, conversation does not equal control. *Sewing v. Bowman*, 371 S.W.3d 321 (Tex.App.–Houston [1st] 2012, pet.rev.dism'd.).

What does the evidence show in this case? It shows first that it was the decision of Appellants to go into the chicken business. They first worked on farms owned by friends to learn how to operate a chicken farm and found a farm to purchase, negotiated an agreement with Sanderson Farms, the chicken producer, and qualified as a grower for Sanderson before they ever talked to Appellees about investing. According to Appellants' testimony they could have found the money to make the purchase elsewhere, so the Appellees' participation was not critical to the venture. (RR Vol. 4, p 78). Further, neither of the Appellees had any knowledge or experience that was necessary to operate a chicken farm: they were investors only.

Appellants also made all the arrangements for financing, to borrow over a million dollars to purchase the Georgia farm. There is no evidence that Appellees chose the lender, investigated the loan terms to decide if the loan was suitable, or discussed the loan with the lender. In fact, no evidence exists that the lender even knew that Appellees existed.

When Appellants decided to buy land and build a chicken farm in Texas it was their decision where to purchase property. (RR Vol. 2, p. 110). There is no evidence that the approval of Appellees

10

or any other investor was either sought or acquired. In this farm as well as in Georgia, Appellants decided who would work on the farm and what they would be paid. Appellee Hoang's own testimony testimony makes clear his lack of control. (RR Vol. 2, pp. 132-142). He had nothing to do with any of the negotiations for the land, the construction of the farm, the grower contract, or the bank loan required to purchase the land and build chicken houses. He did not even meet the contractors who prepared the site and built the chicken houses. He did not keep the bank account nor did he pay any bills for the business. Appellants handed the checkbook and signed checks.

In responses to questions about the relationship between the chicken farm and Sanderson Farms, the producer, Appellee Hoang testified that he had no dealings with Sanderson, that "The chicken company they only deal with the <u>owners</u> of the company" (*emphasis added*). (RR Vol. 2, p.140). Those "owners" were Appellants, not him. He also testified that "I just do whatever Phap Nguyen and Andy Ngo tell me to do." (RR Vol. 2, p.141).

When asked "what you did without talking to Andy and Phap first" Hoang responded:

> A  When I drive the tiller to prepare the road, and I just drive the lawnmower. I do not need to talk to them or ask them. As to the anything need to be done, I do it.
>
> Q  Can you tell me anything else that you ever did on the farm without asking them first?
>
> A  Many things, but I cannot.
>
> Q  Tell me what they are.
>
> A  This cleaning the ditches to make the road so that the vehicle can drive in. Pave the cement. Do the flooring for the mobile home.

From his testimony it is apparent that Appellee Hoang made no executive decisions in operating the chicken farm. Actually the evidence showed that Appellee Hoang worked as a laborer in the chicken

11

houses and that Appellants "fired" him as an employee because of their dissatisfaction with his job performance and his lack of responsibility. (RR Vol. 3, pp 185-186; Vol. 3, p. 34-36).

Finally, one of the most telling admissions by Appellee Hoang of a lack of control over the venture was this response:

Q    The chicken farm in Texas, who made the decision to sell it?

A    Those two, because of their name on the document.

Further, when asked about the sale of the chicken farm in Georgia Appellee Hoang stated " the deal was handled by those two people." (RR Vol. 3, p. 131). Appellee Nguyen testified that the decision to sell the farm in Georgia was his and Appellee Ngo's, and they did not talk to Appellees about selling it before they made the decision. (RR Vol. 3, p. 176). There can be no executive decision more important to a business venture than to sell the business itself and cease all operations. A sale of the chicken farm would end the venture and the relationship of the parties. One who has no say in such a decision cannot claim he had the right to make executive decisions.

There is no evidence at all that Appellee Le ever participated in any decision necessary in the purchase, operation or sale of the chicken farms in Georgia and Texas. She was present at the final distribution of funds from the venture, but there is no evidence that she participated in any of the business decisions that were made.

Sharing or Agreeing to Share in Any Losses:

An agreement to share losses of a business or to pay debts to third parties is a good indicator of an ownership status. This case lacks any evidence that either Appellee ever paid, or expected to pay, any losses of the business or to pay a debt of the chicken farm to a third party. It was clear from

12

the beginning that only Appellants stood to lose if the venture failed. (RR Vol. 2, p. 63). Appellee Ngo understood at all times that if the business failed he would lose everything, his time, for the liability for the bank loans, everything. But he did not expect Appellees to be responsible for any losses. (RR Vol. 2, p. 81).

At every stage it was Appellants who made up any shortfall. For example, in Georgia, when the farm with its initial six chicken houses was not producing enough income to even pay the farm utilities and operating expenses, it was Appellants who came up with the funds. For a time the needed funds came from the income of Appellant Dung Vu, earned in her decorating business in New Orleans. (RR, Vol. 3, pp 170-171). Appellees contributed nothing.

When Appellants realized that building two more chicken houses on the farm in Georgia was necessary to make the farm economically viable, they invested back into the farm what they would normally have paid themselves as labor expense (they paid themselves and all employees an amount whenever a batch of chickens was sold to defray their basic living expenses ) in order to have the funds necessary to build the additional houses. (RR Vol. 2, p. 84-85; Vol 3, p. 171). Appellees contributed nothing.

In both Georgia and Texas it was Appellants who assumed the full legal liability for bank loans to purchase and/or build the farm. (RR Vol. 2, p. 81).

After Appellants made the decision to move to Texas and build a farm in Robertson County, they learned that Sanderson Farms would allow them to add another eight chicken houses, expanding from 16 to 24 and increasing the farm's profitability. It was Appellant Nguyen who borrowed $400,000 from family or friends to come up with the necessary funds. (RR Vol. 3, p. 87-88). Appellees incurred no legal liability.

13

Appellants never told a creditor of the chicken farms that Appellees had anything to do with the farm, much less that they would be liable for debts incurred. Likewise, there is no evidence that Appellees ever told a creditor or third party that they were liable for debts of the business. In this case it is clear that evidence does not exist on this element of a partnership.

Contributing or Agreeing to Contribute Money or Property to the Business:

It is not contested that Hoang invested $80,000 and Le (with Tuan Ngo) $50,000 to purchase the chicken farm in Georgia.

Summary: The Totality of the Evidence Shows that Appellees were not Partners:

Appellees satisfy two of the elements necessary to the creation of a partnership. They both contributed money and were entitled by agreement to a portion of the profits earned. But in many critically important ways there is no evidence of a partnership. No evidence exists that the parties referred to themselves as partners or represented to others that a partnership existed. There is no evidence that Appellee's ever lost or stood to lose anything other than their investment. And most important of all, Appellee's had no control over the executive decisions made in the business, a clear indicator that they were investors but not partners.

Point of Error No. 2 Restated: THE EVIDENCE IS LEGALLY INSUFFICIENT TO ESTABLISH THAT APPELLANTS BREACHED A CONTRACT WITH APPELLEES.

Point of Error No. 3 Restated: THE EVIDENCE IS INSUFFICIENT TO SHOW ANY DAMAGES FOR BREACH OF A PARTNERSHIP AGREEMENT.

Point of Error No. 4 Restated: THE EVIDENCE IS INSUFFICIENT TO SHOW ANY DAMAGES FOR BREACH OF A CONTRACT.

14

As the breach of partnership and breach of contract claims are based on the same operative facts and the same damages were claimed for both alleged breaches, Appellants will address the issue of damages in a combined argument applicable to both claims.

Appellee Hoang was asked what he claimed that Appellants had done to harm or injure him. His answer was that (1) they had paid themselves 20% of the profits made from purchase, management, and sale of the chicken farms as compensation for their management of the chicken farms, and (2) they had held out funds from the distribution made after the farm in Texas was sold to pay the Internal Revenue Service.

Appellee Le's testimony is somewhat confusing. She is clear that she objected to Appellants paying themselves any compensation for their services, about withholding any funds to pay taxes, and about the division between the distribution between her and her former boyfriend. (RR Vol. 2, p. 57-58).

On the issue of labor, she seems to assert that Appellants were already paid for their services. (RR Vol. 2, p.20). She testifies that they were paid $3,500 per month. Later, it becomes clear that this testimony is incorrect. She admits that they were paid $3,500 per batch of chickens sold and that five batches a year were sold (RR Vol. 2, p. 47-48), which means that Appellants received only $17,500 per year, paltry compensation for working 12-14 hours a day, going without pay for nearly two years, and assuming personal liability for about $7,000,000 in bank loans.

With respect to Appellants' withholding of funds to pay taxes she testified that "the tax money had been deducted before giving this money to me." (RR Vol. 2, p. 51). She said she had not reported the gain she received because "Andy said he had already paid tax for that portion already. When asked what she wanted, she said "I just want Andy to pay me the tax back to me so I can report to the IRS.

15

(RR Vol. 2, p. 54). Of course, the problem with that position, as explained by Appellants' accounting expert, is that the IRS considers Appellants as the taxpayer because Appellants were the purchasers and sellers of the farms.

Le also complains that Appellants should not have divided the profits from the chicken farm operations with Tuan Ngo. (RR Vol. 2, p. 57). Her testimony fails to show that Appellants should have known that only she was entitled to profits. She admitted that when the money was sent to Appellant Ngo that there was nothing with the money "that said whose money its was." (RR Vol. 2, p. 42). She likewise admitted that she never gave anything that said that "this is my part and this is Tuan's part." (RR Vol. 2, p. 42). Other evidence shows that Tuan Ngo's paycheck from working on the chicken farm went to Appellee Le and that distribution of funds made by Appellants on another occasion was divided between Appellee Le and Tuan Ngo.

Payment of 20% of Net Profits to Appellants a Breach of a Partnership Agreement or Contract?:

It was uncontradicted that when Appellants made a final distribution of profits from the sale of the chicken farm in Robertson County that they deducted from the amount distributed to the investors 20% of the profits as compensation to them for their services provided. It is uncontradicted that the parties did not discuss at the beginning of the business that Appellants would charge for their services. Counsel for Appellee Hoang asked Appellant Ngo why he should be entitled to compensation out of profits while Appellee should not, when he also worked on the farm. Appellant Ngo clearly explained the difference between one who is a common laborer and can be replaced, and one if has overall responsibility for managing the business. (RR Vol. 2, p. 106-107).

Appellants believe that the basic source of error in the jury verdict in this case was a

16

presumption by the jury that a party is only entitled to be paid for services rendered if there is an express agreement to that effect, while the law in Texas is actually that a party is entitled to compensation unless an express agreement establishes the compensation due for those same services.

There is a fundamental difference in compensation to Appellants for a return on the monies they invested, and the services they provided. They are entitled to be paid a return on their monetary investment just as are Appellees. But Appellees refused to accept that Appellants were also entitled to be paid for their management services, additional investments, sacrifices, and assumption of debts on the business. Appellee Hoang's opinion at trial was that "we are all the same," meaning that a return on investment is all anyone is entitled to receive. (RR Vol 3, p. 129).

His opinion is incorrect under Texas law. Texas recognizes that a party may have a claim for services rendered even when there is no contract providing for that compensation. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). The underlying theory is that it would be unjust for a party to receive benefits as the result of the efforts of another without paying the value of those benefits to the party who did the work. *Baldwin v. Smith*, 586 S.W.2d 624, 632 (Tex.Civ.App.–Tyler 1979), reversed on other grounds 611 S.W.2d 611 (Tex. 1980); *Murphy v. Canion*, 797 S.W.2d 944 (Tex.App.–Houston [14th] 1990, no writ hist.).

The elements of a claim in *quantum meruit* are as follows:

1. valuable services were rendered;

2. for the person sought to be charged;

3. the services were accepted by the person sought to be charged, used and enjoyed by him;

4. under circumstances as reasonably notified the other person that there was an expectation of being paid.

17

*Vortt Exploration Company v. Chevron*, 787 S.W.2d 942 (Tex. 1990).

There is no doubt that Nguyen and Ngo rendered valuable services. They spent uncompensated time learning the chicken business before deciding to enter it, secured grower contracts, financed the construction of two chicken houses in Georgia by foregoing any payment of even basic living expenses to themselves so that the farm could build the houses; assumed debt in excess of seven million dollars; went months without compensation in Georgia while they operated a chicken farm there (they reinvested their wages for their farm labor, while no other investor did so); worked long hours (RR Vol. 3, p. 209) while the other investors were free to engage in other gainful employment; went without compensation for a year after selling the Georgia farm while they purchased and constructed the farm in Texas (RR Vol. 3, p. 180); and then operated the farm in Texas on a full-time basis and negotiated a sale of it at a substantial profit to all investors.

The services were rendered for all investors, not just Appellees. While Appellants also received a distribution of profits, their proportionate part of those profits on their monetary investment was no greater than that of the other investors. And the amount of the return they received on their monetary investment was only a small fraction of what they earned for all investors.

Appellants' services were accepted by all the investors, including Appellees. While Appellees were not in control of the operations of the chicken farms, they were aware that the farms had been purchased by Appellants; that Appellants were living on the farms and operating them; that Appellants received no compensation for long periods of time while they put together the deals; that Appellants put in many, many hours managing the farms; that Appellants had over the time the farms were operating assumed personal liability for approximately seven million dollars in debt; and that the farms would never have been purchased and would have never earned any return to the investors without

18

Appellants' management skill and effort.

Finally, was there anything about what Appellants did that would put Appellees on notice that they expected to be compensated for their services? Appellees were free to run their own businesses or seek other employment but Appellants were committed to full-time operation of the farms. Appellees knew that for substantial periods of time Nguyen and Ngo were working without any compensation at all for their services. That knowledge alone was sufficient to put anyone on notice that a return on their monetary investment alone would not fully compensate Appellants and at some point they expected to be compensated by something more.

An agreement to divide any return on a monetary investment in the chicken houses would not preclude Appellants from claiming compensation for their management services and labor. In *Black Lake Pipe Line Company v. Union Construction Company*, 538 S.W.2d 80 (Tex. 1976), the court held that even if the parties have an express contract that provides compensation for some services a party can recover the reasonable value of other services which were rendered and accepted that were not covered by the express contract.

This case is in an unusual posture. It is not a suit by Appellants seeking a judgment that Appellees should be ordered to pay them reasonable compensation, but instead a suit by Appellees to recover damages because Appellants already paid themselves that compensation. Since the compensation has already been paid, Appellants contend they had no duty at trial to prove that their compensation was reasonable, but that Appellees had a burden to show it was unreasonable.

When the agreement between the parties was silent on the question of compensation by Appellants for their services there is no evidence that by charging for their efforts they breached any partnership agreement. If the jury found a breach of a partnership agreement or contract because

19

Appellants were paid for their services, it is not supported by any evidence because it is presumes that Appellants were only entitled to be paid for their services if they expressly contracted to be paid.

<u>Is Withholding Money from a Distribution of Profits to pay Federal Taxes a Breach of a Partnership Agreement Or Contract?</u>:

Appellees also contended at trial that Appellants breached their "partnership agreement" by withholding monies to pay the Internal Revenue Service for taxes on capital gains arising from the purchase and sale of the chicken farms and for taxes on ordinary income as a result of recapture of depreciation expense deductions taken on the farms. Appellees claimed that Appellants should instead give them the amount of money withheld for payment of taxes and it would be up them whether to report the income and pay taxes on it.

Those taxes were explained by Michael Halls, a C.P.A. called by Appellants as an expert. He testified that there would be a capital gains tax liability on the sale of the chicken farm(s), and in his opinion the Internal Revenue Service would assess that liability against Appellants because they were shown as the owners of the farm. (RR Vol. 4, p. 21).

Halls also testified that there would be a tax liability in the form of a "recapture" of depreciation expensed on the farm. (RR Vol. 4, p. 15). His testimony was that Appellants would be responsible for payment of those taxes. He further testified that while the methodology used by Appellant Ngo to calculate the expected tax liability was not the same as a certified public accountant would use, it was a reasonable method of calculating the tax liability. (RR Vol. 4, p. 21).

The issue here is whether one can be in breach of a contract by compliance with the Internal Revenue Code. Appellants argued that any tax liability from the sale of the chicken farm will fall on them, so they are justified in withholding the amount of that tax liability from the proceeds distributed.

In other words, they take the funds because they will owe the taxes. Appellants had no way of compelling Appellees to pay the IRS if they distributed all the profits to them. Appellants did not trust Appellees. That Appellees insisted on being paid in cash at the time of the final distribution contributed to Appellants' doubt Appellees would report and pay taxes on any profits distributed to them. (RR Vol. 3, p. 59). It was not unreasonable for Appellants to hold the money that would be owed.

Appellees questioned whether the sale of the chicken farm in Robertson County and the reinvestment by Appellants properly qualified as what was referred to as a "Section 1031 exchange," in an attempt to raise doubt with the jury as to whether a tax liability actually existed. If the transaction does not qualify as a Section 1031 exchange, Appellants will be liable immediately for the taxes. (RR Vol. 4, p. 71). Deferring payment of the capital gain taxes in no way injures Appellees: they have what was distributed to them free and clear of any tax liability because Appellants assume payment of any taxes due.

Was It a Breach of a Partnership Agreement or Breach of Contract to Divide Proceeds between Appellant Le and Tuan Ngo Rather than Pay All the Proceeds to Appellee Le?:

In addition to those claims on which she joins Appellee Hoang, Appellee Le makes an additional claim, i.e. that Appellants breached their agreement with her by paying part of the distribution of profits to Tuan Ngo. She claims she contributed $50,000 and she alone is entitled to a return on the investment of that amount. To understand this issue requires reviewing the facts and circumstances under which the investment was made.

There is no evidence that Appellants ever represented to anyone that they would pay a proportionate part of any distribution solely to Appellee Le. If there is any basis for that claim, it must be an implied promise. The evidence shows, however, that the investment Appellee Le claims to have

21

solely made was actually made as the result of a conversation between Tuan Ngo and Appellant Ngo, not as the result of a conversation between Appellee Le and Appellant Ngo.

Tuan Ngo and Appellee Le lived together for seven years. (RR Vol. 2, p. 41). Appellant Ngo's uncontradicted testimony was that he contacted Tuan Ngo about investing in the purchase of the farm. Tuan Ngo told him he would talk to Appellee about it. Tuan Ngo, not Appellee Le, then contacted Appellant Ngo and said that "they" would invest in the farm.

Appellant Ngo then received a check in the agreed amount of the investment drawn on an account solely in Appellee Le's name. Neither Appellee Le nor Tuan Ngo gave anything to Appellant Ngo that said whose money was being invested. (RR Vol. 2, p. 42). Appellant Ngo later learned other information that confirmed the investment was made jointly. Tuan Ngo worked on the farm for a period of time as a laborer and instructed Appellant Ngo to make his paychecks payable to Appellee Le and those checks were sent to her. When asked how Appellant Ngo "is supposed to know that Tuan is not supposed to get any of the money?" Appellee Le responded "Because of my money." (RR Vol. 2, p. 42).

A distribution of some accumulated profits was made at one time to Appellee Le in the amount of $14,000: she told Appellee Ngo that she divided those funds with Tuan Ngo. (RR Vol. 2, p. 113). At the time of the distribution of the funds Appellant Ngo put the money down on the table to pay Appellee Le and then she told him to give Tuan Ngo his part, and he did so. (RR Vol. 2, p. 117).

Is the evidence sufficient to show the existence of an implied agreement to pay only Appellee Le? To put the question another way, should Appellant Ngo have known from the facts and circumstances that only she was to be paid at the time of the final distribution of the proceeds from the sale? Given the circumstances, the answer is "no." Appellee Le's real complaint is not that Appellant

disregarded any agreement or understanding, but rather that she and Tuan Ngo have parted ways and she did not want to split the profit from the investment with her ex-boyfriend.

An implied agreement may arise out of the regular course of conduct between the parties. *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mt. Ranch, Inc.*, 2014 Tex.App. LEXIS 13417 (Tex.App.–San Antonio 2014, rev'd. in part; aff'd. as modified). There must exist a meeting of the minds. *Prime Prods, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.–Houston [1st] 2002, pet. denied).

In this case there is insufficient evidence to support a finding that an implied agreement between Appellee Le and Appellants existed that only she should be paid any proceeds from the investment made by her and Tuan Ngo. She cannot hold Appellants liable on an implied agreement to pay only her because there was no meeting of the minds that she alone would be paid. *Prime Prods, Inc.* There is no basis for a finding of breach of an agreement because of the payment of the proceeds from an investment to both investors.

Counsel for Appellee also alluded several times during the trial that there was some duty by Appellants, either by contract or by implication, to include Appellees as owners on the chicken farms they owned at the time of trial. (RR Vol. 2, p. 100). This argument is essentially that once someone is partner he has a right to be a partner thereafter in any venture and to participate in other ventures of Appellants. As a matter of law that claim is not valid. *Rankin v. Naftalis*, 557 S.W.3d 940 (Tex.1977); *Greenberg Traurig, LLP v. National American Insurance Company*, 448 S.W.3d 115 (Tex.App.–Houston [14th] 2014). Appellants agreed to participate with Appellees in one venture, a chicken farm, and when that farm was sold no continuing business relationship continued. (RR Vol. 2, p. 100). Further, there is no competent evidence of the value of Appellants' farms or any other basis

23

upon which the jury could have calculated Appellee's damages based on that argument.

Point of Error No. 5 Restated: THE TRIAL COURT ERRED IN AWARDING JUDGMENT FOR DAMAGES FOR BOTH BREACH OF A PARTNERSHIP AGREEMENT AND BREACH OF CONTRACT WHEN BOTH CAUSES OF ACTION AROSE FROM THE SAME FACTS OR EVENTS.

Texas long ago adopted what is called the "one recovery rule." *Southern County Mutual Insurance Company v. First Bank & Trust*, 750 S.W.2d 170 (Tex. 1988); *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex. 1991); *Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). This means that generally when a party recovers damages under two different theories or causes of action that arise from the same operative facts he must elect one but cannot recover on both.

That rule was illustrated in a partnership case, *Murphy v. Seabarge, Ltd.*, 868 S.W.2d 929 (Tex.App.–Houston [14th] 1994, aff'd.). One party claimed that the other had paid himself more than their partnership agreement allowed. Those payments became an issue, because unlike this case, the partnership was unable to service its debt and funds were not available to pay a management fee. The jury found that the payments made were self-dealing, a breach of the partnership agreement and a breach of fiduciary duty. The court noted there was no distinction between the acts that constituted self-dealing, a breach of fiduciary duty, or violations of the Partnership Agreement: all were based on the same actions. The court held that the plaintiff was only entitled to recover one compensation for its loss as the result of the conduct of the defendant, and that since the jury questions inquired about damages for the same conduct the judgment resulted in an impermissible double recovery. *Murphy* p. 937.

Appellants recognize that in some situations, when there is an additional basis for damages together with actual damages, that a party may recover additional damages arising from the same fact

24

situation. For example, one could be found to have committed a violation of a common law duty and also to have violated the Texas Deceptive Trade Practices Act, TEXAS BUSINESS AND COMMERCE CODE § 17.41, *et. seq*. In that case it is possible to recover additional damages allowed by statute. But in the case before the court, the jury did not award any exemplary damages and only awarded actual damages.

*Murphy* is on all fours with the case before this court. In this case there is only one contract, according to Appellees, which they say was an agreement to form a partnership. The acts they complain of are the payment by Appellees to themselves of compensation for their management and labor, withholding funds to pay taxes, and for Appellee Le, a complaint that someone else received funds she was entitled to solely receive. All of these complaints arise out of the same event, i.e. the distribution of funds by Appellees. And the "contract" is the "partnership agreement." Therefore, awarding damages both for "breach of contract" and for "breach of a partnership agreement" is a double recovery of damages for the same conduct.

Point of Error No. 6 Restated: THE EVIDENCE IS INSUFFICIENT TO ESTABLISH ANY LIABILITY BY APPELLEE DUNG VU BECAUSE THERE IS INSUFFICIENT EVIDENCE THAT SHE ENGAGED IN ANY CONDUCT OF WHICH APPELLEES COMPLAIN.
———

All the evidence shows regarding Appellant Vu is that she is married to Appellant Nguyen, she provided financial support to the chicken farm in Georgia with funds she earned in her business, and she was a signatory on the title documents for the farms and on the loan documents with the lenders. There is no evidence that she calculated the amounts that Appellants Nguyen and Ngo decided to withhold from the final division of proceeds and there is no evidence that she made the decision to withhold funds from the distribution to the investors.

A wife is not automatically liable for any obligations created by her spouse. TEXAS FAMILY CODE § 3.201(a). A spouse is only liable for the acts of her spouse if the spouse acts as her agent or if the debt is created for "necessaries." There is no evidence that Appellees provided Appellant Vu's family "necessaries." There is no evidence that Appellant Nguyen was acting as an agent for Appellant Vu.

TEXAS FAMILY CODE § 3.201(c) explicitly states that a spouse is not automatically considered an agent because parties are married. Some evidence of an agency relationship is required. Appellee Vu signed the title documents and loan papers herself. There is no evidence that her spouse acted for her under a power of attorney or delegation of authority. There is no basis for an award of damages against Appellant Vu.

## **CONCLUSION**

Appellants request that this court reverse the judgment of the trial court and render judgment that Appellees take nothing by way of this suit.

If this court rules that the evidence is insufficient to show the parties were partners it should render judgment that no partnership existed between the parties and reverse the award of damages for breach of partnership against Appellants.

If the court affirms the judgment of the trial court that the parties were partners, the award of damages for breach of partnership should be reversed as there is legally insufficient evidence of such a breach.

The court should reverse the award of damages for breach of contract for the reason that the evidence of breach is legally insufficient to support that award.

If the court affirms the judgment of the trial court that the parties were partners and that both a breach of the partnership agreement and a breach of contract occurred, the court should require Appellees to elect which damages they choose to retain, as the award of damages on both claims is an impermissible double recovery of damages arising from the same facts.

The court should reverse any judgment against Appellant Dung Vu as the evidence is insufficient that she committed any act or omission which Appellees claim was a cause of injury to them resulting in damages.

The court should award all costs of this appeal to Appellants.

27

Respectfully submitted,

*Tom Rorie*

Tom Rorie
State Bar No. 17238000
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099

**ATTORNEY FOR APPELLANTS**


**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 10,743 words (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix). This is a computer-generated document created in WordPerfect, using 12-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*Tom Rorie*

Tom Rorie


**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served on counsel for Appellees this 29th day of July, 2015, by e-file service.

*Tom Rorie*

Tom Rorie

28

NO. 1-15-00352-CV

_____

IN THE
FIRST COURT OF APPEALS
AT HOUSTON, TEXAS

_____


PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU,
Appellants

VS.

MANH HOANG and DUNG LE,
Appellees

_____


Appealed from the 55th Judicial District Court of
Harris County, Texas

_____

**APPENDIX TO APPELLANTS' BRIEF**
_____


TOM RORIE
State Bar No. 17238000
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099

ATTORNEY FOR APPELLANTS


**ORAL ARGUMENT REQUESTED**

APPENDIX

| No. | Document |
| --- | --- |
| 1 | Plaintiffs' Original Petition |
| 2 | Charge of the Court |
| 3 | Final Judgment |
| 4 | Motion for Judgment Notwithstanding Verdict, Motion to Disregard Jury Findings, and Objections to Proposed Final Judgment |
| 5 | Motion for New Trial |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

NO. 2011-72719

| | | |
|---|---|---|
| MANH HOANG and | § | IN THE DISTRICT COURT |
| DUNG LE | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| PHAP V. NGUYEN | § | |
| ANDY NGO, and | § | |
| DUNG T. VU | § | |
| Defendants | § | 55 JUDICIAL DISTRICT |



## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MANH HOANG and DUNG LE (hereinafter referred to as "Plaintiff"), in the above styled and numbered cause, and file this Original Petition, and would respectfully show the court the following:

### A.  Discovery Control Plan

Pursuant to TEX. R. CIV. P. 190, this case should proceed under Lever 2 for discovery.

### B.  Parties

Plaintiff MANH HOANG is an individual residing in Harris County, Texas

Plaintiff DUNG LE is an individual residing in Harris County, Texas.

Defendants PHAP V. NGUYEN and DUNG T. VU are residents of Harris County, Texas and may be served at 19030 Cloyanna Lane. Humble, Texas 77346.

Defendant ANDY NGO is a resident of Harris County, Texas and may be served at 18722 Timber Twist, Humble, Texas 77346.

1

## C. Jurisdiction

Jurisdiction is proper in this Court because the amount in controversy is within the jurisdictional amounts of this Court. The Court has personal jurisdiction over the Defendants PHAP V. NGUYEN, ANDY NGO and DUNG T. VU because they are residents of Texas.

## D. Venue

Venue is proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code §15.002(2) because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County. Pursuant to Texas Civil Practices & Remedies Code §§ 15.002(2) and (3), venue is proper in Harris County, Texas because it is the resident of PHAP V. NGUYEN, ANDY NGO and DUNG T. VU.

## E. Facts

Plaintiffs and Defendants are partners in a partnership to operate poultry ranches. Plaintiffs paid defendants money (Exhibit A) so that they can be partners and to receive their shares of profits in the partnership. (Plaintiff Manh Hoang paid Eighty Thousand Dollars ($80,000.00 and plaintiff Dung Le paid Fifty Thousand Dollars ($50,000.00)).

This partnership first operated a poultry ranch in Georgia (Exhibit B) for a period of twenty two (22) months, and later sold it for a profit (Exhibit C). The partnership then bought two other poultry ranches in Texas (Exhibit D). After operating for approximately twenty four (24) months, this partnership sold both of the poultry ranches in Texas for, again, a profit.

Plaintiffs repeatedly asked for accounting, income tax returns and their shares of profit, but were only provided some handwritten pages with numbers and no supporting documents (Exhibit E).

2

Unofficial Copy Office of Harris County District Clerk Daniel District Clerk

Plaintiffs also found out that the partnership did not file its tax returns with the Internal Revenue Service. However, Defendants PHAP V. NGUYEN and DUNG T. VU reported the activities of the partnership under schedule F of their personal income tax returns (Exhibit F).

Plaintiffs hired the Law Firm of Robert Pham & Associates to request accounting and their proper shares of profit in June 30, 2011 (Exhibit G) and defendants did not respond.

### F. Cause of Action

### First Cause of Action: Accounting

Plaintiffs paid a substantial amount for their shares of partnership, profit and loss. Under the agreement between plaintiffs and defendants, plaintiffs were to receive their shares of profits. However, Plaintiffs have been unable to obtain information or documentation reflecting the income and expenses of the partnership. Plaintiffs received some money from defendants as profit; but plaintiffs cannot obtain the true amount of profits without an accounting from defendants. Defendants owe a fiduciary duty to plaintiffs and should be required to provide an accounting to plaintiffs.

### Second Cause of Action: Breach of Contract

Plaintiffs and defendants entered into a valid and enforceable verbal contract for plaintiff to purchase their portions in a partnership and plaintiffs performed their obligations under the contract by putting a large sum of money into the partnership. Defendants have failed to perform their obligations under the contract because not all profits were disbursed to plaintiffs.

### Third Cause of Action: Promissory Estoppel

Defendants promised plaintiffs Manh Hoang and Dung Le that they would received profit sharing from the operations and sales of poultry ranches. Defendants could have and should have foreseen that plaintiffs would substantially rely on this promise. Plaintiffs relied to their detriment

Unofficial Copy Office of this Daniel District Clerk

3

on defendants' promises by tendering the sum of One Hundred and Thirty Thousand Dollars ($130,000.00) to defendants Phap V. Nguyen, Dung T. Vu and Andy Ngo. Accordingly, defendants are stopped from denying that they are liable for the costs incurred by plaintiffs in reliance on this promise.

**<u>Fourth Cause of Action: Misrepresentation</u>**

Defendants Phap V. Nguyen, Dung T. Vu and Andy Ngo knew or should have known that forming a partnership would require (1) a filing of a partnership income tax return, (2) to provide accurate accounting to all partners and (3) to divide profit accordingly. However, all activities were reported under form 1040, personal income tax return of Phap V. Nguyen and Dung T. Vu; all accounting records were not provided to plaintiffs; and profits were hidden from plaintiffs. Defendants omitted material facts with awareness that plaintiffs might or would rely upon them in the course of business. Plaintiffs justifiably relied upon the facts as represented by defendants when deciding to join the partnership. In facts, plaintiffs were not in a position to know of the misrepresentation and omissions.

The representations made by defendants were material. Plaintiffs would not join the partnership if defendants had not made this representation. In making the misrepresentation, defendants failed to act as a reasonably prudent person would have acted under the same or similar circumstances. Specifically, defendants failed to exercise ordinary care in communicating the information to plaintiffs. Accordingly, their conducts were such as to rise to the level of negligence.

Plaintiffs were damaged as a result of defendants' misrepresentations because a correct amount of profits was not distributed.

4

Unofficial Copy Office of Chris Daniel District Clerk

### Fifth Cause of Action: Fraudulent Inducement to Contract

When defendants induced plaintiffs to be their partners, they represented to plaintiffs that a partnership would be formed, all accounting would be provided to all partners, and all profits would be divided equally to all partners according to their capital contributions.

The aforementioned representations were false. Defendants knew these representations were false when they were made. Alternatively, defendants made these representations recklessly, without any regard for their truth. Furthermore, defendants intended that plaintiffs rely on these representations. The conduct of defendants was such as to rise to the level of fraud.

Plaintiffs had no knowledge of the falsity of defendants' representations. Plaintiffs, in facts, justifiably relied upon the representations of defendants in entering into the partnership.

Plaintiffs have been injured as a direct and proximate result of the foregoing fraudulent inducement.

### Sixth Cause of Action: Fraud

Defendants represented to plaintiffs that a partnership would be formed and profits would be divided equally between partners according to their capital contributions. At the time defendants made the foregoing representations, defendants knew that they were false or made the representations without knowledge of the truth thereof.

Plaintiffs justifiably relied upon the facts as represented by defendants when deciding to be the partners in a partnership. In fact, plaintiffs were not in a position to know of the falsity of the misrepresentations.

These representations by defendants were material because they induced plaintiffs to pay One Hundred and Thirty Thousand Dollars ($130,000.00). In making the misrepresentations and

5

Unofficial Copy Office of Chris Daniel District Clerk

omitting the pertinent facts, defendants acted so as to deceive and defraud plaintiffs. Accordingly, their conducts were such as to rise to the level of common law fraud. Plaintiffs have been injured as a direct and proximate result of the foregoing fraudulent conduct.

### Seventh Cause of Action: Breach of Fiduciary Duty

Plaintiffs, to defendants' knowledge, trusted defendants. As a result, defendants owed fiduciary duties to plaintiffs, including the duties of undivided loyalty, good faith and fair dealing. Defendants also had a duty to refrain from using the relationship to benefit their own interests. However, defendants breached their fiduciary duties to plaintiffs by not reporting the actual revenue of the partnership to plaintiffs, knowingly and intentionally failing to pay plaintiffs their shares of revenues, knowingly and intentionally not filing a partnership tax return

### G. Attorney Fees

Plaintiffs are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38 because this is a suit for a claim listed in Section 38.001(8). Plaintiffs retained counsel, who presented plaintiffs' claim to defendants, and defendants did not tender the amount owed within 30 days of the date the claim was presented. (See attached exhibit G). Defendants should be ordered to pay a reasonable attorney's fees, and judgment should be rendered against Defendants in favor of this attorney.

### H. Condition Precedent

All conditions precedent to plaintiffs' claim for relief have been performed or have occurred.

### I. Demand for Jury

Plaintiffs demand a jury trial and tender the appropriate fee with this petition

6

## J. Request for Disclosure

Under Texas Rule of Civil Procedure 194, plaintiff requests that defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2(a),(b),(c),(d),(e),(f),(g),(h).

## H. Prayer

For these reasons, Plaintiffs ask that Defendants be cited to appear and answer and, on final trial, that Plaintiffs have judgment against Defendants for the following: actual damages, prejudgment and post judgment interest, costs of suit, attorney's fees, and all other relief, in law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

**ROBERT PHAM & ASSOCIATES, P.C.**
9999 Bellaire Bvld., Suite 1122
Houston, Texas 77036
Telephone No. (713) 776-3333
Facsimile No. (713) 776-3335

By: _____
Robert B. Pham
Texas Bar No. 00795590
Attorney for Plaintiffs

7

Wise money
routine
check 113000023
005748860989

Andy Ngo
3828 Atascocita Rd
Humble TX. 77396

ACC # Andy Ngo
00774797-6931 G.A
005748860989 TX
act 2042696725 Laquette
louisiana

**Bank of America**  | Customer Receipt | **1406.73**

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com

```
Tran 00106   09/28/2007   13:09  NTX
R/TH 540580132 CC  0002786 Tlr 00006
Account         *******6931
Less Cash                    $0.00
Deposit                  $10,000.00
CKCHNJ***************    06/08
```

95-14-2005B  08-2004

---

**Bank of America** | USA | Customer Receipt

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com

```
Tran 000520  04/18/2006     09:36
Entity NNJ  CC 0090169 Tlr 00001
Account         *******0989
R/TH 540740134
Deposit                  $45,000.00
```

95-14-2005B  08-2004

---

**Bank of America** | USA | Customer Receipt

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com



**PLAINTIFF'S EXHIBIT A**

```
Tran 000250    05/03/2006 09:24
Entity NNJ  CC 0090169 Tlr 00006
From Account    *******9314
To Account      *******0989
Deposit                   $5,000.00
```

95-14-2005B  08-2004

 **Capital One®**

# DOMES C WIRE TRANSFER SLIP

REGION: HOU     BRANCH\DEPT: HUMBLE     OFFICER: 2810

CUSTOMER REQUESTING TRANSFER:   MANH THAI HOANG

BALANCE PRIOR TO WIRE:   $60,152.30

TITLE/ADDRESS:   MANH THAI HOANG OR
NGOC DIEM THI VU
13118 LAVAL ST
NEW ORLEANS LA 70129

PHONE NUMBER:

ACCOUNT ON ANALYSIS: ☐ YES ☐ NO

ACCOUNT NUMBER TO DEBIT:   2040128177    ACCOUNT TYPE:   VIP FREE INTEREST CHECKING

AMOUNT OF WIRE:   $55,000.00    FEE:   $15.00

TRANSFER TO BANK:   BANK OF AMERICA

ZIP:    CITY:   HUMBLE    STATE: TX

ROUTING NO:   111000025

BENEFICIARY BANK (if applicable):

ZIP:    CITY:    STATE:

ROUTING NO/ACCOUNT NO:

FOR THE ACCOUNT OF:   PHAP VANNGUYEN

ADDRESS:   6003 CALDICOTE ST.

ADDRESS:

ZIP: 77346    CITY: HUMBLE    STATE: TX

ACCOUNT NUMBER:   005863393658

COMMENTS:

CUSTOMER SIGNATURE:

ID VERIFIED AND
WIRE PROCESSED BY:

VERIFICATION OF
CORPORATE AUTHORIZATION:   Check One: ☐ Corporate Resolution ☐ Voctor 12

CALL BACK SIGNATURE FOR PHONE
OR FAX (IF APPLICABLE):

SECOND APPROVAL
(IF APPLICABLE):

ACCEPTING N.O. WIRE CLERK:

REFERENCE #:

DATE: 04/27/2006    TIME: 03:44:50 PM    USER ID: PDBLUFOR

81IM12 (4/06) 391050    Capital One, National Association, Member FDIC

# CapitalOne

Direct inquiries to Customer Service
(504) 533-5361 or (800) 262-5689

MANH THAI  HOANG OR
NGOC DIEM THI VU
6003 CALDICOTE ST
HUMBLE TX  77346-2775

Need Money for College?
Apply for a Capital One
Education Loan.
Capitalonebank.com
Normal credit
qualifications apply.

## Account Summary - VIP Interest Checking Account 2040128177

| Previous balance | $23,231.89 | | |
|---|---|---|---|
| + 3 Credits/deposits | $46,155.91 | Statement cycle began | April 14, 2006 |
| - 11 Debits/checks | $56,617.84 | Statement cycle ended | May 11, 2006 |
| - Service charges | $0.00 | Number of days in cycle | 28 |
| + Interest paid | $3.65 | Minimum balance this cycle | $4,632.37 |
| Ending balance | $12,773.61 | Average collected balance | $19,014.12 |
| | | Interest earned during this cycle | $3.65 |
| | | Annual percentage yield earned | 0.25% |
| | | Interest paid YTD | $7.51 |

## Deposits and Other Credits

| Date | Amount | | Description | Card No. |
|---|---|---|---|---|
| 04/24 | $36,951.71 | Customer deposit | | |
| 04/25 | $1,004.20 | Customer deposit | | |
| 05/08 | $8,200.00 | Customer deposit | | |
| 05/11 | $3.65 | Interest paid | | |

## Checks          (*Preceding check number(s) are not on this statement)

| Date | Check No. | Amount | Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|---|---|---|
| 04/24 | 197 | $500.00 | 05/02 | 201 | $47.13 | 05/11 | 203 | $62.41 |
| 04/20 | 200* | $176.36 | 05/04 | 202 | $393.00 | 05/05 | 205* | $59.80 |

## Other Withdrawals and Deductions

| Date | Amount | | Description | Card No. |
|---|---|---|---|---|
| 04/17 | $307.90 | Payment to loan number | 117700146910 | |
| 04/18 | $51.24 | ACH Withdrawal | CINGULAR CARE     CELLULAR | |
| 04/28 | $55,000.00 | Wire transfer withdrawal | WIRE   516AD00 | |
| 04/28 | $15.00 | Wire transfer fee | WIRE   516AD00 | |
| 05/05 | $5.00 | Plus Package Dues | | |

## Balance Summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 04/13 | $23,231.89 | 04/24 | $59,148.10 | 05/04 | $4,697.17 |
| 04/17 | $22,923.99 | 04/25 | $60,152.30 | 05/05 | $4,632.37 |
| 04/18 | $22,872.75 | 04/28 | $5,137.30 | 05/08 | $12,832.37 |
| 04/20 | $22,696.39 | 05/02 | $5,090.17 | 05/11 | $12,773.61 |

# A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv. Unins   File Number **2876**   Loan Number   Mortgage Insurance Case Number
4. ☐ VA   5. ☐ Conv. Ins.

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "p.o.c" were paid outside of closing; they are shown here for informational purposes and are not included in the totals:

**D. NAME AND ADDRESS OF BORROWER:** Rhap Nguyen
410 Erve Williams Road, Moultrie, GA 31768

Dung Vu by Rhap Nguyen, AIF
410 Erve Williams Road, Moultrie, GA 31768

Andy Ngo
410 Erve Williams Rd.
Moultrie, GA 31768

**E. NAME AND ADDRESS OF SELLER:** Wrights Chick-Inn, Inc.
Erve Williams Road, Moultrie, GA 31768

**F. NAME AND ADDRESS OF LENDER:** First Financial Bank
P. O. Box 6056, Gainesville, GA 30504

**G. PROPERTY LOCATION:** Erve Williams Road
Moultrie, GA 31768

**H. SETTLEMENT AGENT:** James M. Blylns II
**PLACE OF SETTLEMENT:** 619 2nd St. SE, P. O. Box 2497, Moultrie, GA 31776
**TIN:** 58-2435291

**SETTLEMENT DATE:** 05/08/2006

**RESCISSION DATE:**

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | $1,490,000.00 | 402. Personal property | $1,490,000.00 |
| 103. Settlements charges to borrower: | | 403. | |
| (from line 1400) | $23,140.60 | | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | |
| 106. City/town taxes          to | | 406. City/town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | $1,513,140.60 | **420. GROSS AMOUNT DUE TO SELLER:** | $1,490,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $10,000.00 | 502. Settlement charges to seller (line 1400) | $200.00 |
| 203. Existing loan(s) taken subject to | $1,192,000.00 | 503. Existing loan(s) taken subject to | |
| | | 504. Payoff of first mortgage loan    Bank of Lenox | $1,255,588.82 |
| | | 505. Payoff of second mortgage loan | |
| | | 506. | |
| | | 507. | |
| | | 508. | |
| | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes  01/01/2006  to  05/08/2006 | | 511. County taxes  01/01/2006  to  05/08/2006 | |
| 212. Assessments          to | $151.04 | 512. Assessments          to | $151.04 |

PLAINTIFF'S EXHIBIT

| 216. | | | 516. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. TOTAL PAID BY/FOR BORROWER: | | $1,202,151.04 | 520. TOTAL REDUCTIONS IN AMOUNT DUE TO SELLER: | | $1,255,939.86 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | | 600. CASH AT SETTLEMENT TO/FROM SELLER | | |
| 301. Gross amount due from borrower (line 120) | | $1,513,140.60 | 601. Gross amount due to seller (line 420) | | $1,490,000.00 |
| 302. Less amount paid by/for borrower (line 220) | | $1,202,151.04 | 602. Less reductions in amt. due seller (line 520) | | $1,255,939.86 |
| 303. CASH ( X FROM ) ( ☐ TO ) BORROWER: | | $310,989.56 | 603. CASH ( ☐ FROM ) ( X TO ) SELLER: | | $234,060.14 |

HUD-1 (3-86) - RESPA, HB 4305.2

# A. Settlement Statement

Jmb

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

## B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins | File Number | Loan Number | Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 3303 | 31~4074731 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "p.o.c." were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:** Tuan A. Nguyen
607 Veterans Parkway S., Moultrie, GA 31768

Katie T. Dam
607 Veterans Parkway S., Moultrie, GA 31768

**E. NAME AND ADDRESS OF SELLER:** Phap Nguyen
410 Erve Williams Road, Moultrie, GA 31768

Andy Ngo
410 Erve Williams Road, Moultrie, GA 31768

**F. NAME AND ADDRESS OF LENDER:** Bank of America, N.A.
9000 Southside Blvd., #600, Jacksonville, FL 32256

**G. PROPERTY LOCATION:** 410 Erve Williams Road
Moultrie, GA 31768

**H. SETTLEMENT AGENT:**
PLACE OF SETTLEMENT: James M. Bivins II
TIN: 619 2nd St. SE, P. O. Box 2497, Moultrie, GA 31776
58-2435291

**SETTLEMENT DATE:** 03/12/2008

**RESCISSION DATE:**

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | $2,000,000.00 | 402. Personal property | $2,000,000.00 |
| 103. Settlements charges to borrower: | | 403. | |
| (from line 1400) | $30,556.00 | | |
| 104. 1/2 of seller's prepayment penalty | $30,000.00 | 404. 1/2 of seller's prepayment penalty | $30,000.00 |
| 105. | | 405. | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | |
| 106. City/town taxes to | | 406. City/town Taxes to | |
| 107. County Taxes to | | 407. County Taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER: | $2,060,556.00 | 420. GROSS AMOUNT DUE TO SELLER: | $2,030,000.00 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| Deposit or earnest money | $20,000.00 | 501. Excess deposit (see instructions) | |
| Principal amount of new loan(s) | $949,000.00 | 502. Settlement charges to seller (line 1400) | $510.00 |
| Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| Principal amount of loan | $547,000.00 | 504. Payoff of first mortgage loan First Financial | $1,144,636.55 |
| | | 505. Payoff of second mortgage loan First Financial | $386,763.96 |
| | | 506. Payoff to First Financial | $42,089.94 |
| Owner Financing | | 507. | |
| | $230,000.00 | 508. Owner Financing | $230,000.00 |
| | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | |
| City/town taxes to | | 510. City/town taxes to | |
| County taxes 01/01/2008 to 03/12/2008 | $1,406.88 | 511. County taxes 01/01/2008 to 03/12/2008 | $1,406.88 |
| Assessments to | | 512. Assessments to | |

PLAINTIFF'S
EXHIBIT

| 214. | | 514. | |
|---|---|---|---|
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 20. TOTAL PAID BY/FOR BORROWER: | $1,747,406.88 | 520. TOTAL REDUCTIONS IN AMOUNT DUE TO SELLER: | $1,805,407.33 |
| 00. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 01. Gross amount due from borrower (line 120) | $2,060,556.00 | 601. Gross amount due to seller (line 420) | $2,030,000.00 |
| 02. Less amount paid by/for borrower (line 220) | $1,747,406.88 | 602. Less reductions in amt. due seller (line 520) | $1,805,407.33 |
| 03. CASH ( ☒ FROM ) ( ☐ TO ) BORROWER: | $313,149.12 | 603. CASH ( ☐ FROM ) ( ☒ TO ) SELLER: | $224,592.67 |

**HUD-1 (3-86) - RESPA, HB 4305.2**

U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

B. TYPE OF LOAN:

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
|---|---|---|---|---|

6. FILE NUMBER: 06-OC042A

7. LOAN NUMBER: 120030186

8. MORTGAGE INS CASE NUMBER:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

(e_800_(06-OC042A PFD06-OC042A/7)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Phap V. Nguyen and wife, Dung T. Vu<br>Andy Ngo<br>9312 Cook Road<br>Calvert, Texas 77837 | | First Financial Bank<br>P.O. Box 1754<br>El Dorado, AR 71731 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: 75-2665483 | I. SETTLEMENT DATE: |
|---|---|---|
| 9312 Cook Road<br>Calvert, TX 77837<br>Robertson County, Texas | J. Ken Muckelroy, Attorney at Law, P.C.<br><br>PLACE OF SETTLEMENT<br>Love Title & Abstract Company<br>114 E. Morgan Street, Franklin, Texas 77856 | May 12, 2009 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 46,560.04 | 403. | |
| 104. Payoff first mortgage/120028659 | 4,853,439.06 | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. Hospital to | | 406. Hospital to | |
| 107. County Taxes to | | 407. County Taxes to | |
| 108. ISD Taxes to | | 408. ISD Taxes to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | **4,900,000.00** | **420. GROSS AMOUNT DUE TO SELLER** | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 4,900,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. Hospital to | | 510. Hospital to | |
| 211. County Taxes to | | 511. County Taxes to | |
| 212. ISD Taxes to | | 512. ISD Taxes to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | **4,900,000.00** | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 4,900,000.00 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | (4,900,000.00) | 602. Less Reductions Due Seller (Line 620) | |
| 303. CASH ( FROM )( TO ) BORROWER | 0.00 | 603. CASH ( TO )( FROM ) SELLER | 0.00 |

The undersigned hereby acknowledges receipt of a completed copy of this statement...



PLAINTIFF'S
EXHIBIT

D

COPY

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % to | | | |
| 802. Loan Discount % to | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mortgage Ins. App. Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 00/00/00 to @ $ /day ( days 6.6500%) | | | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance years @ $ per year | | | |
| 1002. Mortgage Insurance years @ $ per year | | | |
| 1003. Hospital years @ $ per year | | | |
| 1004. County Taxes years @ $ per year | | | |
| 1005. ISD Taxes years @ $ per year | | | |
| 1006. years @ $ per year | | | |
| 1007. years @ $ per year | | | |
| 1008. years @ $ per year | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee to | | | |
| 1102. Abstract or Title Search to | | | |
| 1103. Title Examination to J. Ken Muckelroy, Attorney at Law, P.C. UCC Search | | 100.00 | |
| 1104. Title Insurance Binder to | | | |
| 1105. Document Preparation to | | | |
| 1106. Notary Fees to J. Ken Muckelroy, Attorney at Law, P.C. | | 430.00 | |
| 1107. Attorney's Fees to | | | |
| (includes above item numbers: | | | |
| 1108. Title Insurance to Love Title & Abstract Company ) | | | |
| (includes above item numbers: | | | |
| 1109. Lender's Coverage $ 4,900,000.00 ) | | 229.00 | |
| 1110. Owner's Coverage $ 229.00 | | | |
| 1111. Tax Certificate to Love Title & Abstract Company | | | |
| 1112. State of TX Guaranty Fund Fee to Love Title & Abstract Company | | 40.00 | |
| 1113. Escrow Fee to J. Ken Muckelroy, Attorney at Law, P.C. | | 5.00 | |
| | | 200.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ 36.00; Releases $ | | | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | 36.00 | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage UCC-3 | | 20.00 | |
| 1204. UCC-3 | | 15.00 | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection to | | | |
| 1303. Reimburse for Rec Fees of Deed to | | | |
| 1304. Escrow for Repairs to J. Ken Muckelroy, Attorney at Law, P.C. | | 28.00 | |
| 1305. to First Financial Bank | | 45,457.04 | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on Lines 103, Section J and 502, Section K) | | | |
| By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement. | | 46,560.04 | |

Certified to be a true copy.

J. Ken Muckelroy, Attorney at Law, P.C.
Settlement Agent

COPY

OMB NO. 2502-0265

**B. TYPE OF LOAN:**

| 1. ☐FHA | 2. ☐FmHA | 3. ☒CONV. UNINS. | 4. ☐VA | 6. ☐CONV. INS. |

**9. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

6. FILE NUMBER:
10-OC090

7. LOAN NUMBER:
120031664

8. MORTGAGE INS CASE NUMBER:

NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0 396 (10-OC090.PFO/10-OC090/16)

**D. NAME AND ADDRESS OF BORROWER:**
nh-Phu, Inc.
uc T. Phan and wife, Anh T. Nguyen
oang T. Phan
397 CR 127
aldwell, Texas 77836

**E. NAME AND ADDRESS OF SELLER:**
Downstream Exchange Company, Qualified Intermediary for Phap V. Nguyen and wife, Dung T. Vu and Andy Ngo
9312 Cooks Rd.
Calvert, Texas 77836

**F. NAME AND ADDRESS OF LENDER:**
First Financial Bank
P.O. Box 1764
El Dorado, AR 71731

**G. PROPERTY LOCATION:**
312 Cooks Rd.
alvert, TX 77836
obertson County, Texas

**H. SETTLEMENT AGENT:** 75-2665483
J. Ken Muckelroy, Attorney at Law, P.C.

**PLACE OF SETTLEMENT**
Love Title & Abstract
114 E. Morgan Street, Franklin, Texas 77856

**I. SETTLEMENT DATE:**
November 15, 2010

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 3,460,000.00 | 401. Contract Sales Price | 3,460,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 100,121.05 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. Hospital Taxes   to | | 406. Hospital Taxes   to | |
| 107. County Taxes  11/16/10 to 01/01/11 | 535.17 | 407. County Taxes  11/16/10 to 01/01/11 | 535.17 |
| 108. ISD Taxes  11/16/10 to 01/01/11 | 1,643.78 | 408. ISD Taxes  11/16/10 to 01/01/11 | 1,643.78 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 3,562,300.00 | **420. GROSS AMOUNT DUE TO SELLER** | 3,462,178.95 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 2,780,000.00 | 502. Settlement Charges to Seller (Line 1400) | 19,408.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage/Partial - | 3,409,414.52 |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. | | 508. | |
| | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. Hospital Taxes   to | | 510. Hospital Taxes   to | |
| 211. County Taxes   to | | 511. County Taxes   to | |
| 212. ISD Taxes   to | | 512. ISD Taxes   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. 2010 Taxes Due to Robertson County Tax A/C | 8,192.66 |
| 218. | | 518. 2010 Taxes Due to Bremond ISD Tax A/C | 26,163.77 |
| 219. | | 519. | |
| **TOTAL PAID BY/FOR BORROWER** | 2,790,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 3,462,178.95 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| Gross Amount Due From Borrower (Line 120) | 3,562,300.00 | 601. Gross Amount Due To Seller (Line 420) | 3,462,178.95 |
| Less Amount Paid By/For Borrower (Line 220) | ( 2,790,000.00) | 602. Less Reductions Due Seller (Line 520) | ( 3,462,178.95) |
| CASH ( X FROM ) ( TO ) BORROWER | 772,300.00 | 603. CASH:( TO ) ( FROM ) SELLER | 0.00 |

1st Loan

OMB NO. 2002-0265

**S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|
| ☐FHA | 2.☐FmHA | 3.☐CONV. UNINS. | 4.☐VA | ☐CONV. INS. |

6. FILE NUMBER: 10-OC091

7. LOAN NUMBER:

8. MORTGAGE INS CASE NUMBER:

NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0 304 [10-OC091.PFO/10-OC091/21]

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Vincent T. Pham and wife, Teresa H. Pham 503 Montana Ridge Ct. Houston, Texas 77041-6239 | Downstream Exchange Company, Qualified Intermediary for Phap V. Nguyen and wife, Dung T. Vu and Andy Ngo 9312 Cooks Road Calvert, Texas 77837 | First Financial Bank P.O. Box 1754 El Dorado, AR 71731 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: 75-2665483 | I. SETTLEMENT DATE: |
|---|---|---|
| 316 Cooks Road Calvert, TX 77837 Robertson County, Texas | J. Ken Muckelroy, Attorney at Law, P.C. PLACE OF SETTLEMENT Love Title & Abstract Company 114 E. Morgan Street, Franklin, Texas 77856 | December 17, 2010 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | | K. SUMMARY OF SELLER'S TRANSACTION | | |
|---|---|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | | 400. GROSS AMOUNT DUE TO SELLER: | | |
| 101. Contract Sales Price | | | 401. Contract Sales Price | | 3,470,000.00 |
| 102. Personal Property | | | 402. Personal Property | | |
| 103. Settlement Charges to Borrower (Line 1400) | | | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| Adjustments For Items Paid By Seller in advance | | | Adjustments For Items Paid By Seller in advance | | |
| 106. Hospital Taxes to | | | 406. Hospital Taxes to | | |
| 107. County Taxes to | | | 407. County Taxes 12/18/10 to 01/01/11 | | 151.36 |
| 108. ISD Taxes to | | | 408. ISD Taxes 12/18/10 to 01/01/11 | | 464.90 |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. GROSS AMOUNT DUE FROM BORROWER | | | 420. GROSS AMOUNT DUE TO SELLER | | 3,470,616.26 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | | |
| 201. | | | 501. Excess Deposit (See instructions) | | |
| 202. Principal Amount of New Loan(s) | | | 502. Settlement Charges to Seller (Line 1400) | | 2,408,648.52 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff of first Mortgage/Loan#120030186 | | 1,061,967.74 |
| 205. | | | 505. Payoff of second Mortgage | | |
| 206. | | | 506. | | |
| 207. | | | 507. (Deposit disb. as proceeds) | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| Adjustments For Items Unpaid By Seller | | | Adjustments For Items Unpaid By Seller | | |
| 210. Hospital Taxes to | | | 510. Hospital Taxes to | | |
| 211. County Taxes to | | | 511. County Taxes to | | |
| 212. ISD Taxes to | | | 512. ISD Taxes to | | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. TOTAL PAID BY/FOR BORROWER | | | 520. TOTAL REDUCTION AMOUNT DUE SELLER | | 3,470,616.26 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | | |
| 301. Gross Amount Due From Borrower (Line 120) | | | 601. Gross Amount Due To Seller (Line 420) | | 3,470,616.26 |
| 302. Less Amount Paid By/For Borrower (Line 220) | | ( | 602. Less Reductions Due Seller (Line 520) | | ( 3,470,616.26) |
| 303. CASH ( X FROM )( TO ) BORROWER | | | 603. CASH ( TO )( FROM ) SELLER | | 0.00 |

1st Loan numbers

# L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $ @ % | | | | |
| Division of Commission (line 700) as Follows: | | | | |
| 701. $ to | | | | |
| 702. $ to | | | | |
| 703. Commission Paid at Settlement | | | | |
| 704. to | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee % to | | | | |
| 802. Loan Discount % to | | | | |
| 803. to | | | | |
| 804. to | | | | |
| 805. to | | | | |
| 806. to | | | | |
| 807. to | | | | |
| 808. to | | | | |
| 809. to | | | | |
| 810. to | | | | |
| 811. to | | | | |
| 812. to | | | | |
| 813. to | | | | |
| 814. | | | | |
| 815. | | | | |
| 816. | | | | |
| 817. | | | | |
| 818. | | | | |
| 819. | | | | |
| 820. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From to @ $ /day ( days %) | | | | |
| 902. Mortgage Insurance Premium for months to | | | | |
| 903. Hazard Insurance Premium for years to | | | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance @ $ per | | | | |
| 1002. Mortgage Insurance @ $ per | | | | |
| 1003. Hospital Taxes @ $ per | | | | |
| 1004. County Taxes @ $ per | | | | |
| 1005. ISD Taxes @ $ per | | | | |
| 1006. @ $ per | | | | |
| 1007. @ $ per | | | | |
| 1008. @ $ per | | | | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or Closing Fee to J. Ken Muckelroy, Attorney at Law, P.C. | | | | 250.00 |
| 1102. Abstract or Title Search to J. Ken Muckelroy, Attorney at Law, P.C. | | UCC Search | | 100.00 |
| 1103. Title Examination to | | | | |
| 1104. Title Insurance Binder to | | | | |
| 1105. Document Preparation to J. Ken Muckelroy, Attorney at Law, P.C. | | | | 450.00 |
| 1106. Notary Fees to | | | | |
| 1107. Attorney's Fees | | | | |
| (includes above item numbers: ) | | | | |
| 1108. Title Insurance to Love Title & Abstract Company | | | | 16,492.00 |
| (includes above item numbers: ) | | | | |
| 1109. Lender's Coverage $ 3,180,000.00 100.00 | | | | |
| 1110. Owner's Coverage $ 3,470,000.00 16,492.00 | | | | |
| 1111. Tax Certificate-reimbursement to J. Ken Muckelroy, Attorney at Law, P.C. | | | | 60.00 |
| 1112. State of TX Guaranty Fund Fee to Love Title & Abstract Company | | | | 5.00 |
| 1113. | | | | |
| 1114. to | | | | |
| 1115. to | | | | |
| 1116. to | | | | |
| 1117. | | | | |
| 1118. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ ; Releases $ 24.00 | | | | 24.00 |
| 1202. City/County Tax/Stamps: Deed $ ; Mortgage $ UCC-1 & UCC-3 | | | | 20.00 |
| 1203. State Tax/Stamps: Revenue Stamps $ ; Mortgage $ UCC-1 & UCC-3 | | | | 5.00 |
| 1204. to | | | | |
| 1205. to | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey to | | | | |
| 1302. Pest Inspection to | | | | |
| 1303. to | | | | |
| 1304. to | | | | |
| 1305. See addit'l disb. exhibit to | | | | 2,391,242.52 |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on Lines 103, Section J and 502, Section K) | | | | 2,408,648.52 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

J. Ken Muckelroy, Attorney at Law, P.C.
Settlement Agent

Certified to be a true copy.

( 10-OC091 / 10-OC091 / 27 )

## SELLER ADDITIONAL DISBURSEMENTS EXHIBIT

Borrower: Vincent T. Pham and wife, Theresa H. Pham
Seller: Phap V. Nguyen and wife, Dung T. Vu
Andy Ngo
Lender: First Financial Bank
Settlement Agent: J. Ken Muckelroy, Attorney at Law, P.C.
(936)275-2304
Place of Settlement: Love Title & Abstract Company
114 E. Morgan Street, Franklin, Texas 77856
Settlement Date: December 17, 2010
Property Location: 8916 Cooks Road
Calvert, TX 77837
Robertson County, Texas

| PAYEE/DESCRIPTION | NOTE/REF NO | SELLER |
|---|---|---|
| Escrow for MH Property Taxes | | 2,000.00 |
| Downstream Exchange Company Exchange Credits | | 2,389,242.52 |
| Total Additional Disbursements shown on Line 1305 | | $ 2,391,242.52 |

(10-OC091.PFD/10-OC091/21)

) + 7000 chevy
+ 2000 Insur
For chevy use
in GA
+ 2500 Set Laundry
+ Refrigerator in GA
+ 1700 For Tien car +
Tires
+ 1900 Toyota 2004
Tix
+ 19,000 Tax payment
For 2010
_____
34,100

- 7000 Toyota 2004
  keep
- 20,000 cadillac keep
_____
= - 27,000

=> 34,100 - 27,000 = 7,100

Tien

) + 9,900 For dodge Truck
use plus Insur for 2 yrs
in waco TX.

Bay

) + 2500 For Toyota 4runner
use in waco. TX.

PLAINTIFF'S
EXHIBIT

E

For Fort n and Builds Business.

) Farm in GA

Sale  2,230,000
Loan  −1,573,488
─────────────
      656,512
      320,000
─────────────
      336,512
      × .20
─────────────
       67,302  Labor
    + 108,171  Tax
─────────────
      175,473

108
68

) Farm In TX

Sale  6,930,000
Loan  −4,540,758
─────────────
     2,389,242
     − 863,556
─────────────
     1,525,686
     × .20
─────────────
       305,137  Labor
    +  543,698  Tax
─────────────
       848,835

⇒ 175,473 + 848,835 = 1,024,308

$$2,384,242$$
$$-\ 1,024,308$$
$$\overline{\phantom{xxxxx}}$$
$$1,364,934$$
$$-\ \ \ \ 20,500 \text{ phap} + \text{Trai} + \text{Bay}$$
$$\overline{\phantom{xxxxx}}$$
$$1,244,434$$
$$\div\ 4$$
$$\overline{\phantom{xxxxx}}$$
$$326,108$$
$$+\ \ \ 7,100$$

$$\boxed{343,208 \text{ phap}}$$

$$326,108$$
$$+\ 3,500$$

$$\boxed{329,608 \text{ Bay}}$$

$\Rightarrow 1,344,434$

$\div 2$

---

$672,217$

$\div 4$

---

$168,054$

$+ 9,900$

---

$\boxed{177,954 \text{ Thea Duong}}$

$\boxed{168,054 \text{ Thien Truong}}$

$168,054 - 40,000$

$\Rightarrow 128,054 \div 2 = 64,027$

$64,027 + 40,000 = 104,027 \text{ Truong}$

$64,027 \text{ Thien}$

8460
8970

---

6930

---

$672,217$

$\div 2$

---

$336,108$

$\times .60$

---

$201,665$

$- 50,000$

---

$151,665$

$\div 2$

---

$75,832$

$75,832$

$+ 50,000$

---

$\boxed{125,832 \text{ Duong Tuan}}$

$\boxed{75,832 \text{ Tuan}}$

$\boxed{134,493 \text{ Tuan}}$

*Farm CG7*

## 1031 exchange: Capital Gains Result : 1031 Tax Calculator

**1. Calculate Net Adjusted Basis:**

| | |
|---|---|
| Original Purchase Price | $ 1,490,000 |
| plus Improvements | +$ 380,000 |
| minus Depreciation | -$ 336,988 |
| = NET ADJUSTED BASIS | =$ 1,533,012 |

**2. Calculate Capital Gain Sales Price of Property:**

| | |
|---|---|
| Sales Price | $ 2,030,000 · |
| minus Net Adjusted Basis | -$ 1,533,012 |
| minus Costs of Sale | -$ 510 ✓ |
| = Capital Gain | =$ 496,478 |

**3. Calculate Capital Gain Tax Due:**

| | |
|---|---|
| Recaptured Depreciation (25%) (336,988 taxed at 25%) | $ 84,247 · |
| plus Federal Capital Gain Tax (Remainder:$496,478 – $336,988 taxed at 15%) | +$ 23,924 |
| plus State Capital Gain Rate: 0% (whole amount taxed at state rate) | ⓪ State |
| = TOTAL ESTIMATE TAXES DUE | $ 108,171 GA * not Right |

*o đóy thuế*
*đổi ư nửa investment*

*done*

*285 ngàn*

*income 400. 1 năm*
400
385
—————
1185
- 400 -
—————
0785 - *Tiền lời*

*Lất phần chung*

*Expten in land Together*

*She patimy.*

60, 959 -

75 = 420. 1 => 168 *morgate* = 252
55 - 312. 1 => 187 + 40%
× 40% labor
—————
712 ngàn of 6 chủ                 151 - Tiền L

*Farm Nail*

# 1031 exchange: Capital Gains Result : 1031 Tax Calculator

**1. Calculate Net Adjusted Basis:**

| | |
|---|---:|
| Original Purchase Price | $ 863,556 |
| plus Improvements | +$ 4,900,000 |
| minus Depreciation | -$ 1,497,013 |
| = NET ADJUSTED BASIS | =$ 4,266,543 |

**2. Calculate Capital Gain Sales Price of Property:**

| | |
|---|---:|
| Sales Price | $ 6,930,000 |
| minus Net Adjusted Basis | -$ 4,266,543 |
| minus Costs of Sale | -$ 36,814 |
| = Capital Gain | =$ 2,626,643 |

**3. Calculate Capital Gain Tax Due:**

| | |
|---|---:|
| Recaptured Depreciation (25%) (1,497,013 taxed at 25%) | $ 374,253 |
| plus Federal Capital Gain Tax (Remainder:$2,626,643 - $1,497,013 taxed at 15%) | +$ 169,445 |
| plus State Capital Gain Rate: 0% (whole amount taxed at state rate) | 0 |
| = TOTAL ESTIMATE TAXES DUE | =$ 543,698 |

*Maco*

2 tháng 12 firm = 100,⁰⁰ # $\frac{7000}{\times 5}$

3,5000

$\begin{array}{r}4.50\\ \times 110\\ \hline 495\\ \times 2\\ \hline 9.80\end{array}$ } **Revenue thuế**

1 triệu ⁰ 1.120
140
1.260

1.000.000 − 400 = 600 ngàn + $\begin{array}{r}630 \text{ ngàn}\\ 160 \text{ labor}\\ \hline 470\end{array}$

= 40%

335 Tiền gas

360 ngàn

× 2 năm rưỡi

335 ngàn

× 2

670 ngàn

Tiền lời 2

900 Tiền lời
151 8 chuồng Gorgeo
112 6 chuồng Gojean

Tiền lời of hay gà

1.163

18,172 — closing

46,968

23,440

23,450 T
23,450 Thien
28,140 Tuan 5,000
18,760 Tam
5,000
23,060

SCHEDULE F
(Form 1040)

Department of the Treasury
Internal Revenue Service (99)

**Profit or Loss From Farming**

▶ Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
▶ See Instructions for Schedule F (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. 14

Name of proprietor

PHAP V NGUYEN

Social security number (SSN)

**A** Principal product. Describe in one or two words your principal crop or activity for the current tax year.

CHICKENS

**B** Enter code from Part IV
▶ 112300

**C** Accounting method: (1) [X] Cash  (2) [ ] Accrual

**D** Employer ID number (EIN), if any

**E** Did you "materially participate" in the operation of this business during 2006? If "No," see page F-2 for limit on passive losses.   [X] Yes  [ ] No

## Part I  Farm Income—Cash Method. Complete Parts I and II (Accrual method. Complete Parts II and III, and Part I, line 11.)

Do not include sales of livestock held for draft, breeding, sport, or dairy purposes. Report these sales on Form 4797.

| | | | |
|---|---|---|---|
| 1 | Sales of livestock and other items you bought for resale | 1 | |
| 2 | Cost or other basis of livestock and other items reported on line 1 | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | |
| 4 | Sales of livestock, produce, grains, and other products you raised | 4 | 145,881 |
| 5a | Cooperative distributions (Form(s) 1099-PATR) | 5a | 5b Taxable amount | 5b | |
| 6a | Agricultural program payments (see page F-3) | 6a | 6b Taxable amount | 6b | |
| 7 | Commodity Credit Corporation (CCC) loans (see page F-3): | | |
| a | CCC loans reported under election | 7a | |
| b | CCC loans forfeited | 7b | 7c Taxable amount | 7c | |
| 8 | Crop insurance proceeds and federal crop disaster payments (see page F-3): | | |
| a | Amount received in 2006 | 8a | 8b Taxable amount | 8b | |
| c | If election to defer to 2007 is attached, check here ▶ [ ] | 8d Amount deferred from 2005 | 8d | |
| 9 | Custom hire (machine work) income | 9 | |
| 10 | Other income, including federal and state gasoline or fuel tax credit or refund (see page F-3) | 10 | |
| 11 | Gross income. Add amounts in the right column for lines 3 through 10. If you use the accrual method, enter the amount from Part III, line 51 ▶ | 11 | 145,881 |

## Part II  Farm Expenses—Cash and Accrual Method.
Do not include personal or living expenses such as taxes, insurance, or repairs on your home.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12 | Car and truck expenses (see page F-4). Also attach Form 4562) | 12 | | 25 | Pension and profit-sharing plans | 25 | |
| 13 | Chemicals | 13 | | 26 | Rent or lease (see page F-5): | | |
| 14 | Conservation expenses (see page F-4) | 14 | | a | Vehicles, machinery, and equipment | 26a | |
| 15 | Custom hire (machine work) | 15 | | b | Other (land, animals, etc.) | 26b | |
| 16 | Depreciation and section 179 expense deduction not claimed elsewhere (see page F-4) | 16 | 108,948 | 27 | Repairs and maintenance | 27 | 1,000 |
| 17 | Employee benefit programs other than on line 25 | 17 | | 28 | Seeds and plants | 28 | |
| | | | | 29 | Storage and warehousing | 29 | |
| 18 | Feed | 18 | | 30 | Supplies | 30 | |
| 19 | Fertilizers and lime | 19 | | 31 | Taxes | 31 | 151 |
| 20 | Freight and trucking | 20 | | 32 | Utilities | 32 | 15,255 |
| 21 | Gasoline, fuel, and oil | 21 | 19,984 | 33 | Veterinary, breeding, and medicine | 33 | |
| 22 | Insurance (other than health) | 22 | 6,133 | 34 | Other expenses (specify): | | |
| 23 | Interest: | | | a | CLEAN OUT SERVICES | 34a | 4,500 |
| a | Mortgage (paid to banks, etc.) | 23a | 60,959 | b | CELL PHONE | 34b | 1,349 |
| b | Other | 23b | | c | LITER TREATMENT | 34c | 1,500 |
| 24 | Labor hired (less employment credits) | 24 | | d | Amortization | 34d | 618 |
| | | | | e | | 34e | |
| | | | | f | | 34f | |

| | | | |
|---|---|---|---|
| 35 | Total expenses. Add lines 12 through 34f. If line 34f is negative, see instructions ▶ | 35 | 220,397 |
| 36 | Net farm profit or (loss). Subtract line 35 from line 11. | 36 | −74,516 |

• If a profit, enter the profit on Form 1040, line 18, and also
  If you file Form 1040NR, enter the profit on Form 1040NR.
• If a loss, you must go to line 37. Estates, trusts, and pa

If you have a loss, you must check the box that describes

• If you checked 37a, enter the loss on Form 1040, line 1
  If you file Form 1040NR, enter the loss on Form 1040N
• If you checked 37b, you must attach Form 6198. Your l


PLAINTIFF'S EXHIBIT

see page F-6).

}  37a [X] All investment is at risk.
   37b [ ] Some investment is not at risk.

Paperwork Reduction Act Notice, see page F-7 of the Instructions.

Schedule F (Form 1040) 2006



*Tiền chiến cửu*

# Depreciation and Amortization

## (Including Information on Listed Property)

OMB No. 1545-0172

**20**07

Attachment
Sequence No. **67**

▶ See separate Instructions.　　▶ Attach to your tax return.

Name(s) shown on return
PHAP V NGUYEN

Business or activity to which this form relates
Sch F: 01 - CHICKENS

Identifying number

| Part I | Election To Expense Certain Property Under Section 179 |
|---|---|

**Note:** If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---:|
| 1 | Maximum amount. See the Instructions for a higher limit for certain businesses | 1 | 125,000 |
| 2 | Total cost of section 179 property placed in service (see Instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation | 3 | 500,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | 0 |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see Instructions | 5 | 125,000 |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---:|
| 7 | Listed property. Enter the amount from line 29 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | 0 |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | 0 |
| 10 | Carryover of disallowed deduction from line 13 of your 2006 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see Instructions) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | 0 |
| 13 | Carryover of disallowed deduction to 2008. Add lines 9 and 10, less line 12 ▶ | 13 | 0 |

**Note:** Do not use Part II or Part III below for listed property. Instead, use Part V.

| Part II | Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See Instructions.) |
|---|---|

| | | | |
|---|---|---|---:|
| 14 | Special allowance for qualified New York Liberty or Gulf Opportunity Zone property (other than listed property) and cellulosic biomass ethanol plant property placed in service during the tax year (see Instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

| Part III | MACRS Depreciation (Do not include listed property.) (See Instructions.) |
|---|---|

### Section A

| | | | |
|---|---|---|---:|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2007 | 17 | 196,633 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

### Section B - Assets Placed in Service During 2007 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19 a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | *năm* | | | |
| e 15-year property | | 398,360 | 10 ✓ | HY | 150DB | 29,877 |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | | | 27.5 yrs. | MM | S/L | |
| | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

### Section C - Assets Placed in Service During 2007 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | | | 40 yrs. | MM | S/L | |

| Part IV | Summary (see instructions) |
|---|---|

| | | | |
|---|---|---|---:|
| 21 | Listed property. Enter amount from line 28 | 21 | 1,530 |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | 228,040 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

For Paperwork Reduction Act Notice, see separate Instructions.

TA)

228.D400-

74,576 *covey cho năm +*

Form 4562 (2007)

# Depreciation and Amortization
## (Including Information on Listed Property)

► See separate Instructions.    ► Attach to your tax return.

OMB No. 1545-0172

**2008**

Attachment
Sequence No. **67**

Name(s) shown on return

PHAP V NGUYEN AND DUNG T VU

Identifying number

Business or activity to which this form relates

Schedule F / Form 4835 - POULTRY

## Part I  Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | | |
|---|---|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses | 1 | $250,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | $800,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 ........ | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2007 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2009. Add lines 9 and 10, less line 12 ........ ► | 13 | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

## Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

## Part III  MACRS Depreciation (Do not include listed property.) (See instructions)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2008 | 17 | 72,448. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ........ ► ☐ | | |

### Section B — Assets Placed in Service During 2008 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 65,840. | 5 | HY | 150DB | 9,876. |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | 100,000. | 20 | HY | 150DB | 3,750. |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed in Service During 2008 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

## Part IV  Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 86,074. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate Instructions.

FDIZ0812L 06/12/08

Form 4562 (2008)

Form **4562**

Department of the Treasury
Internal Revenue Service (99)

## Depreciation and Amortization
### (Including Information on Listed Property)

► See separate instructions. ► Attach to your tax return.

OMB No. 1545-0172

**2009**

Attachment
Sequence No. **67**

Name(s) shown on return

ANDY NGO

Identifying number

Business or activity to which this form relates

Schedule F / Form 4835 - POULTRY

**Part I** Election To Expense Certain Property Under Section 179
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | |
|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses | 1 | $250,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | $800,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | |
|---|---|---|
| 7 | Listed property. Enter the amount from line 29 ............ 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2008 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2010. Add lines 9 and 10, less line 12 ........ ► 13 | | |

Note: *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II** Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | 559,000. |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

**Part III** MACRS Depreciation (Do not include listed property.) (See instructions)

### Section A

| | | |
|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2009 | 17 | |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ............ ► ☐ | | |

### Section B – Assets Placed In Service During 2009 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 604,000. | 5 | HY | 150DB | 90,600. |
| c 7-year property | | | | | | |
| d 10-year property | | 1,288,300. | 10 | HY | 150DB | 96,623. |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C – Assets Placed In Service During 2009 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | |
|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 746,223. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate Instructions.

FDIZ0812L 07/07/09

Form 4562 (2009)

*income tax*

# Depreciation and Amortization
## (Including Information on Listed Property)

▶ See separate Instructions.  ▶ Attach to your tax return.

OMB No. 1545-0172

**2010**

Attachment
Sequence No. 67

Name(s) shown on return

PHAP V NGUYEN AND DUNG T VU

Identifying number

Business or activity to which this form relates

Schedule F / Form 4835 - POULTRY

## Part I — Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,000,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 ... 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2009 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2011. Add lines 9 and 10, less line 12 ... ▶ 13 | | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

## Part II — Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

## Part III — MACRS Depreciation (Do not include listed property.) (See instructions)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2010 | 17 | 100,581. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ... ▶ ☐ | | |

### Section B — Assets Placed In Service During 2010 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | 70,000. | 10 | HY | 150DB | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed In Service During 2010 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

## Part IV — Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 100,581. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate Instructions.

# ROBERT B. PHAM & ASSOCIATES, P.C.

### Attorneys and Counselors at Law

9999 Bellaire Blvd., Suite #1122
Houston, Texas 77036

Tel: (713) 776-3333
Fax: (713) 776-3335
robertpham@pdq.net

June 30, 2011

**VIA CERTIFIED MAIL, RRR 7004 2510 0000 6496 9481 AND REGULAR MAIL**

Phat V. Nguyen
Dung T. Vu
18722 Timber Twist
Humble, Texas 77346

Re:             Our Clients:                    Manh Hoang & Dung Le

Dear Mr. Nguyen and Ms. Vu:

Please be advised that I am representing the above-mentioned clients regarding their partnerships in your farms in Texas and Georgia.

I have reviewed your profit sharing calculations (see attached Exhibit A) and apparently, per my clients, it does not reflect the true division of income

At this time, please accept this letter as a formal demand for additional $250,000 per Mr. Hoang and $250,000.00 for Ms. Le.

If I do not receive the said $500,000.00 for my clients as of July 31, 2011, I will file a lawsuit against you and will ask for attorney fees.

If you have any questions, please contact me at the address listed above.

Sincerely

Robert Pham
Attorney at Law



PLAINTIFF'S EXHIBIT

G

# ROBERT B. PHAM & ASSOCIATES, P.C.

### Attorneys and Counselors at Law

9999 Bellaire Blvd., Suite #1122
Houston, Texas 77036

Tel: (713) 776-3333
Fax: (713) 776-3335
robertpham@pdq.net

June 30, 2011

**VIA CERTIFIED MAIL, RRR 7004 2510 0000 6496 9474 AND REGULAR MAIL**

Andy Ngo
18722 Timber Twist
Humble, Texas 77346

Re:           Our Clients:                    Manh Hoang & Dung Le

Dear Mr. Ngo:

Please be advised that I am representing the above-mentioned clients regarding their partnerships in your farms in Texas and Georgia.

I have reviewed your profit sharing calculations (see attached Exhibit A) and apparently, per my clients, it does not reflect the true division of income

At this time, please accept this letter as a formal demand for additional $250,000 per Mr. Hoang and $250,000.00 for Ms. Le.

If I do not receive the said $500,000.00 for my clients as of July 31, 2011, I will file a lawsuit against you and will ask for attorney fees.

If you have any questions, please contact me at the address listed above.

Sincerely

Robert Pham
Attorney at Law

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

HUMBLE TX 77346

| | |
|---|---|
| Postage | $ $0.64 |
| Certified Fee | $2.85 |
| Return Receipt Fee (Endorsement Required) | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.79 |

02
Postmark Here
JUN 30 2011
08/30/2011

Sent To Andy Ngo
Street, Apt. No.; or PO Box No. 18722 Timber Twist
City, State, ZIP+4 Humble, Texas 77346

S Form 3800, June 2002                    See Reverse for Instructions

CAUSE NO. 201172719

RECEIPT NO. 13801       0.00      CIV
09-28-2012       TR # 72830822

PLAINTIFF: HOANG, MANH
   vs.
DEFENDANT: NGUYEN, PHAP V

In The 55th
Judicial District Court
of Harris County, Texas
55TH DISTRICT COURT
Houston, TX

**CITATION**

THE STATE OF TEXAS
County of Harris

TO: NGUYEN, PHAP V
   832 COUNTY ROAD 4849  TIMPSON TX 75975

Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>28th day of September, 2012</u>, in the above cited cause number and court. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

TO OFFICER SERVING:
   This citation was issued on 3rd day of October, 2012, under my hand and seal of said Court.

<u>Issued at request of:</u>
NGUYEN, TRAN BAO
11045 LANDSWALK DR103
HOUSTON, TX 77099
Tel: (832) 725-1491
<u>Bar No.:</u> 24043847

CHRIS DANIEL, District Clerk
Harris County, Texas
201 Caroline     Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

GENERATED BY: MOSLEY, DEANDRA SHAN   73J/CNU/939507

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____ .M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock _____ .M., on the ____ day of _____,

_____, by delivering to _____ defendant, in person, a copy(ies) of the
true copy of this Citation together with the accompanying _____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

Fee: $_____

_____

of       County, Texas

P24

| | | |
|---|---|---|
| MANH HOANG and | § | IN THE DISTRICT COURT |
| DUNG LE | § | |
|     Plaintiffs | § | |
| vs. | § | |
| | § | |
| PHAP V. NGUYEN, ANDY NGO and | § | 55TH JUDICIAL DISTRICT |
| DUNG T. VU | § | |
|     Defendants | § | HARRIS COUNTY, TEXAS |



## CHARGE OF THE COURT

Members of the Jury:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Definitions & Instructions

As used in this Charge, the following words have the following meanings:

1. "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

2. "Hoang" means Plaintiff Manh Hoang.

3. "Le" means Plaintiff Dung Le.

4. "Nguyen" means Defendant Phap V. Nguyen.

5. "Ngo" means Defendant Andy Ngo.

6. "Vu" means Defendant Dung T. Vu.

7. "Chicken Farm Business" means any part of the chicken farming operations which have been the subject matter of this litigation.

## Question No. 1

Did any of the parties listed below agree with Hoang that Hoang would have a 25% interest in the Chicken Farm Business?

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties unexpressed thoughts or intentions.

Answer "Yes" or "No."

    a) Phap V. Nguyen:     _yes_

    b) Andy Ngo:     _yes_

    c) Dung T. Vu:     _yes_

Unofficial Copy Office of Chris Daniel District Clerk

If you have answered "Yes" for either of the parties listed in Question No. 1, then answer the following question as to that party. Otherwise, do not answer the following question.

## Question No. 2

Did either of the parties listed below fail to comply with the agreement with Hoang?

Answer "Yes" or "No."

a) Phap V. Nguyen: _____yes_____

b) Andy Ngo: _____yes_____

c) Dung T. Vu: _____yes_____

Unofficial Copy Office of Chris Daniel District Clerk

If you have answered "Yes" to Question No. 2 as to any person then answer the following question. Otherwise, do not answer the following question.

## Question No. 3

What sum of money, if any, if paid now in cash would fairly and reasonably compensate Hoang for his damages, if any, that resulted from the failure to comply with the parties' agreement?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount of interest on damages, if any.

Consider the following elements of damages, if any, and none other.

    a) The proceeds from the Chicken Farm Business owed to Hoang.

Answer in dollars and cents, if any:

Answer:     $ 93,109.75

Unofficial Copy Office of Chris Daniel District Clark

## Question No. 4

Did any of the parties listed below agree with Le that Le would have 15.6% interest in the Chicken Farm Business?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties unexpressed thoughts or intentions.

Answer "Yes" or "No."

a) Phap V. Nguyen: _____yes_____

b) Andy Ngo: _____yes_____

c) Dung T. Vu: _____yes_____

Unofficial Copy Office of Chris Daniel District Clerk

If you have answered "Yes" for either of the parties listed in Question No. 4, then answer the following question as to that party. Otherwise, do not answer the following question.

## Question No. 5

Did either of the parties listed below fail to comply with the agreement with Le?

Answer "Yes" or "No."

a)  Phap V. Nguyen:  _Yes_

b)  Andy Ngo:  _Yes_

c)  Dung T. Vu:  _Yes_

Unofficial Copy Office of Chris Daniel District Clerk

If you have answered "Yes" to Question No. 5, then answer the following question. Otherwise, do not answer the following question.

## Question No. 6

What sum of money, if any, if paid now in cash would fairly and reasonably compensate Hoang for his damages, if any, that resulted from the failure to comply with the parties' agreement?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount of interest on damages, if any.

Consider the following elements of damages, if any, and none other.

(a) The proceeds from the Chicken Farm Business owed to Le.

Answer in dollars and cents, if any:

Answer:     $ 72,170.48

## Question No. 7

Did the parties and Hoang create a partnership?

A "partnership" is an association of two or more persons to carry on a business for profit as owners, regardless of whether the persons intend to create a partnership or the association is called a "partnership," "joint venture," or other name.

Factors indicating that persons have created a partnership include the persons':

1) receipt or right to receive a share of profits of the business;

2) expression of an intent to be partners in the business;

3) participation or right to participate in control of the business;

4) agreement to share or sharing losses of the business or liability for claims by third

parties against the business; and

5) agreement to contribute or contributing money or property to the business.

Answer "Yes" or "No."

a) Phap V. Nguyen: _____yes_____

b) Andy Ngo: _____yes_____

c) Dung T. Vu: _____yes_____

Unofficial Copy Office of Chris Daniel District Clerk

If you answered "Yes" to Question No. 7, then answer the following question. Otherwise, do not answer the following question.

## Question No. 8

Did the any party listed below fail to comply with one or more of the following duties as to Hoang?

Duty of loyalty. A partner's duty of loyalty includes:

a) accounting to and holding for the partnership all property profit, or benefits derived by the partner in conducting and winding up the partnership business or from use by the partner of partnership property.

b) refraining from dealing with the partnership on behalf of a person who has an interest adverse to the partnership; and

c) refraining from competing or dealing with the partnership on behalf of a person who has an interest adverse to the partnership

Duty of care. A partner's duty of care to the partnership and the other partners is to act in the conducting and winding up of the partnership business with the care that an ordinary prudent person would exercise in similar circumstances. An error in judgment does not by itself constitute a breach of the duty of care.

Duty of utmost good faith, fairness and honesty. Partners owe a duty of utmost good faith, fairness, and honesty in dealings with each other on matters pertaining to the enterprise.

Duty to disclose. Partners owe each other a duty of full disclosure of all matters affecting the partnership.

Answer "Yes" or "No."

a) Phap V. Nguyen:     _yes_

b) Andy Ngo:     _yes_

c) Dung T. Vu:     _yes_

If you answered "Yes" to any party in Question No. 8 then answer the following question. Otherwise, do not answer the following question.

## Question No. 9

What sum of money, if any, if paid now in cash would fairly and reasonably compensate Hoang for his damages, if any, that resulted from the party or parties' breach of duty?

Answer in dollars and cents, if any.

Answer: $ 212, 208. 00

## Question No. 10

Did a relationship of trust and confidence exist between the parties below and Hoang?

A relationship of trust and confidence existed if Hoang justifiably placed trust and confidence in any of the parties below to act in Hoang's best interest. Hoang's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No."

a)  Phap V. Nguyen:    _____yes_____

b)  Andy Ngo:    _____yes_____

c)  Dung T. Vu:    _____yes_____

Unofficial Copy Office of Chris Daniel District Clerk

If you answered "Yes" to either Question No. 7 or Question No. 10, then answer the following question. Otherwise, do not answer the following question.

## Question No. 11

Did the parties below comply with their fiduciary duty to Hoang?

Because a relationship of trust and confidence existed between them, the party or parties owed Hoang a fiduciary duty. To prove they complied with their duty, the party or parties must show:

a) The business transaction was fair and equitable to Hoang;
b) The party or parties made reasonable use of the confidence that Hoang placed in them;
c) The party or parties acted in the utmost good faith and exercised the most scrupulous honesty toward Hoang;
d) The party or parties placed the interest of Hoang before their own, did not use the advantage of their position to gain any benefit for themselves at the expense of Hoang, and did not place themselves in any position where their self-interest might conflict with their obligations as a fiduciary; and
e) The party or parties fully and fairly disclosed all important information to Hoang concerning the business transaction.

Answer "Yes" or "No."

a) Phap V. Nguyen: _____no_____

b) Andy Ngo: _____no_____

c) Dung T. Vu: _____no_____

"No"

Answer the following question for a party only if you unanimously answered ~~"Yes"~~ for that party in Question No. 11. Otherwise, do not answer the following question.

To answer ~~"Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.~~

You must unanimously agree on the amount of any award of exemplary damages.

## Question No. 12

What sum of money, if any, if paid now in cash, should be assessed against the parties listed below and awarded to Hoang as exemplary damages, if any, for such party's conduct found in response to Question No. 11?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are –

1) The nature of the wrong.

2) The character of the conduct involved.

3) The degree of culpability of the parties.

4) The situation and sensibilities of the parties concerned.

5) The extent to which such conduct offends a public sense of justice and propriety.

6) The net worth of the parties.

Answer in dollars and cents, if any.

a) Phap V. Nguyen:  $ 0

b) Andy Ngo:  $ 0

c) Dung T. Vu:  $ 0

## Question No. 13

Did the parties and Le create a partnership?

A "partnership" is an association of two or more persons to carry on a business for profit as owners, regardless of whether the persons intend to create a partnership or the association is called a "partnership," "joint venture," or other name.

Factors indicating that persons have created a partnership include the persons':

1) receipt or right to receive a share of profits of the business;

2) expression of an intent to be partners in the business;

3) participation or right to participate in control of the business;

4) agreement to share or sharing losses of the business or liability for claims by third parties against the business; and

5) agreement to contribute or contributing money or property to the business.

Answer "Yes" or "No."

a) Phap V. Nguyen: ___yes___

b) Andy Ngo: ___yes___

c) Dung T. Vu: ___yes___

Unofficial Copy Office of Chris Daniel District Clerk

If you answered "Yes" to Question No. 13, then answer the following question. Otherwise, do not answer the following question.

## Question No. 14

Did the any party listed below fail to comply with one or more of the following duties as to Le?

Duty of loyalty. A partner's duty of loyalty includes:

a) accounting to and holding for the partnership all property profit, or benefits derived by the partner in conducting and winding up the partnership business or from use by the partner of partnership property.

b) refraining from dealing with the partnership on behalf of a person who has an interest adverse to the partnership; and

c) refraining from competing or dealing with the partnership on behalf of a person who has an interest adverse to the partnership

Duty of care. A partner's duty of care to the partnership and the other partners is to act in the conducting and winding up of the partnership business with the care that an ordinary prudent person would exercise in similar circumstances. An error in judgment does not by itself constitute a breach of the duty of care.

Duty of utmost good faith, fairness and honesty. Partners owe a duty of utmost good faith, fairness, and honesty in dealings with each other on matters pertaining to the enterprise.

Duty to disclose. Partners owe each other a duty of full disclosure of all matters affecting the partnership.

Answer "Yes" or "No."

d) Phap V. Nguyen:    yes

e) Andy Ngo:    yes

f) Dung T. Vu:    yes

Unofficial Copy Office of Chris Daniel District Clerk

If you answered "Yes" to any party in Question No. 14 then answer the following question. Otherwise, do not answer the following question.

## Question No. 15

What sum of money, if any, if paid now in cash would fairly and reasonably compensate Le for his damages, if any, that resulted from the party or parties' breach of duty?

Answer in dollars and cents, if any.

Answer: $ 132,418.26

Unofficial Copy Office of Chris Daniel District Clerk

## Question No. 16

Did a relationship of trust and confidence exist between the parties below and Le?

A relationship of trust and confidence existed if Le justifiably placed trust and confidence in any of the parties below to act in Hoang's best interest. Le's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No."

    d)  Phap V. Nguyen:    __yes__

    e)  Andy Ngo:    __yes__

    f)  Dung T. Vu:    __yes__

Unofficial Copy Office of Chris Daniel District Clerk

If you answered "Yes" to Question No. 13 or Question No. 16, then answer the following question. Otherwise, do not answer the following question.

## Question No. 17

Did the parties below comply with their fiduciary duty to Le?

Because a relationship of trust and confidence existed between them, the party or parties owed Hoang a fiduciary duty. To prove they complied with their duty, the party or parties must show:

a) The business transaction was fair and equitable to Le;
b) The party or parties made reasonable use of the confidence that Le placed in them;
c) The party or parties acted in the utmost good faith and exercised the most scrupulous honesty toward Le;
d) The party or parties placed the interest of Le before their own, did not use the advantage of their position to gain any benefit for themselves at the expense of Le, and did not place themselves in any position where their self-interest might conflict with their obligations as a fiduciary; and
e) The party or parties fully and fairly disclosed all important information to Le concerning the business transaction.

Answer "Yes" or "No."

   d) Phap V. Nguyen:    no

   e) Andy Ngo:    no

   f) Dung T. Vu:    no

Unofficial Copy Office of Chris Daniel District Clerk

Answer the following question for a party only if you unanimously answered ~~"Yes"~~ for that party in Question No. 17. Otherwise, do not answer the following question.

~~To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.~~

You must unanimously agree on the amount of any award of exemplary damages.

## Question No. 18

What sum of money, if any, if paid now in cash, should be assessed against the parties listed below and awarded to Le as exemplary damages, if any, for such party's conduct found in response to Question No. 17?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are –

1) The nature of the wrong.

2) The character of the conduct involved.

3) The degree of culpability of the parties.

4) The situation and sensibilities of the parties concerned.

5) The extent to which such conduct offends a public sense of justice and propriety.

6) The net worth of the parties.

Answer in dollars and cents, if any.

a) Phap V. Nguyen:       $ _O_____

b) Andy Ngo:              $ _O_____

c) Dung T. Vu:            $ _O_____

**A. Instructions For The Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

    1. have the complete charge read aloud if it will be helpful to your deliberations;

    2. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    3. give written questions or comments to the bailiff who will give them to the judge;

    4. write down the answers you agree on;

    5. get the signatures for the verdict certificate; and

    6. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**B. Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

    If 11 jurors agree on every answer, those 11 jurors sign the verdict.

    If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 [or 11] who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
JUDGE PRESIDING

## NO. 2011-72719

| | | |
|---|---|---|
| MANH HOANG and | § | IN THE DISTRICT COURT |
| DUNG LE | § | |
|     Plaintiffs | § | |
| vs. | § | |
| | § | |
| PHAP V. NGUYEN, ANDY NGO and | § | 55TH JUDICIAL DISTRICT |
| DUNG T. VU | § | |
|     Defendants | § | HARRIS COUNTY, TEXAS |

### VERDICT CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.  Check one:

**Unanimous Verdict:**

_____  Our verdict is unanimous.  All 12 of us have agreed to each and every answer.  The presiding juror has signed the certificate for all 12 of us.

_Alexis Rodriguez_ (signature)

_Alexis Rodriguez_

Signature of Presiding Juror          Printed Name of Presiding Juror

**Verdict Of Eleven:**

_____  Our verdict is not unanimous.  Eleven of us have agreed to each and every answer and have signed the certificate below.

**Verdict Of Ten:**

__X__  Our verdict is not unanimous.  Ten of us have agreed to each and every answer and have signed the certificate below.

Unofficial Copy Office of Chris Daniel District Clerk

| SIGNATURE | NAME PRINTED |
|---|---|
| 1. *Heidi Gillam* | Heidi Gillam |
| 2. *(signature)* | Michael Garcia |
| 3. *(signature)* | Maria Costardado |
| 4. *A. Penning* | Kathryn Alexis Pennington |
| 5. *Rudy W Bryant* | RANDY W. BRYANT |
| 6. *Jeannie Gomez* | Jeannie Gomez |
| 7. *Sarah B* | Sandra Bunton |
| 8. *Rudy Caldwell* | Rudy Caldwell |
| 9. *(signature)* | Ian Salbacka |
| 10. *Alexis Rodriguez* | Alexis Rodriguez |
| 11. | |

Unofficial Copy Office of Chris Daniel District Clerk

NO. **2011-72719**

| | | |
|---|---|---|
| **MANH HOANG and** | § | **IN THE DISTRICT COURT** |
| **DUNG LE** | § | |
| **Plaintiffs** | § | |
| **vs.** | § | |
| | § | |
| **PHAP V. NGUYEN, ANDY NGO and** | § | **55TH JUDICIAL DISTRICT** |
| **DUNG T. VU** | § | |
| **Defendants** | § | **HARRIS COUNTY, TEXAS** |

## FINAL JUDGMENT

On _____, this cause came to be heard, Plaintiff MANH

HOANG ("Hoang") and DUNG LE ("Le") and Defendant PHAT V. NGUYEN ("Nguyen"),

ANDY NGO ("Ngo"), and DUNG T. VU ("Vu"), appeared personally and through their attorneys

of record and announced ready for trial.

A jury consisting of twelve (12) qualified jurors was duly empanelled and the case

proceeded to trial on the merit. Having considered the facts and evidence presented at trial, the

charge of the Court and the verdict of the jury are incorporated herein for all purposes by reference.

Having received the jury's answers to the jury charge, the court accepts the jury's verdict

and rendered the judgment as follows:

1. It is ORDERED, ADJUDGED, and DECREED that Plaintiff MANH HOANG

   recovers from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU,

   jointly and severally, a sum of $93,109.75 for breach of the parties' agreement.

2. It is ORDERED, ADJUDGED, and DECREED that Plaintiff DUNG T. LE recovers

   from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, jointly and

   severally, a sum of $72,170.48 for breach of the parties' agreement.

Unofficial Copy Office of Chris Daniel District Clerk

3. It is ORDERED, ADJUDGED, and DECREED that Plaintiff MANH HOANG recovers from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, jointly and severally, a sum of $212,208.00 for their breach of duty in a partnership.

4. It is ORDERED, ADJUDGED, and DECREED that Plaintiff DUNG T. LE recovers from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, jointly and severally, a sum of $132,418.26 for their breach of duty in a partnership.

5. It is ORDERED, ADJUDGED, and DECREED that Plaintiff MANH HOANG and DUNG T. LE recover from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, jointly and severally, a pre-judgment interest in the sum of $ 76,465.97, calculated from the date of filing to the date of entry of this order.

6. It is ORDERED, ADJUDGED, and DECREED that Plaintiff MANH HOANG and DUNG T. LE recover from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, jointly and severally, a post-judgment interest on the entire amount awarded at the rate of five percent (5.0%) per annum, compounded annually, until paid.

All judgment shall bear an interest of five percent (5.0%) per annum compounded annually until paid in full.

All writs and processes for the enforcement and collection of this Final Judgment will be issued as necessary upon request.

The court denies all relief not granted in this judgment.

SIGNED the 27 day of _____June_____, 2015.

_____
JEFF SHADWICK,
PRESIDING JUDGE

NO. 2011-72719

| | | |
|---|---|---|
| MANH HOANG and DUNG LE | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, TEXAS |
| PHAP V. NGUYEN, ANDY NGO and DUNG T. VU | § | 55TH JUDICIAL DISTRICT |

## MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT, MOTION TO DISREGARD JURY FINDINGS, AND OBJECTIONS TO PROPOSED FINAL JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME PHAP V. NGUYEN, ANDY NGO and DUNG T. VU, hereinafter referred to as "Defendants," and file the these combined motions objecting to the proposed Final Judgment presented by MANH HOANG and DUNG LE, hereinafter referred to as "Plaintiffs". Defendants request that the court disregard jury findings and request the entry of a judgment notwithstanding the verdict of the jury as to all defendants, all as set out herein. In support, they show the court as follows:

### 1.

### ATTORNEY'S FEES ON APPEAL CANNOT BE AWARDED BECAUSE THERE IS NO FINDING BY THE JURY AND NO EVIDENCE TO SUPPORT AN AWARD OF SUCH FEES

The proposed judgment tendered to the court awards the following relief:

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff MANH HOANG and DUNG T. LE recover from Defendants, PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU an amount of $15,000.00 in attorney's fees in the event of an appeal to the Court of Appeals and Plaintiffs prevail on said appeal, an additional $10,000.00 in attorney's fees in the event a petition for review is filed in the Texas Supreme Court, and an additional $15,000.00 in attorney's fees in the event review is granted by the Texas Supreme Court and Plaintiffs prevail on said appeal.

There was no evidence offered at trial as to <u>any</u> attorney's fees on any claim by Plaintiffs, either for trial preparation, trial, or for appeal. Any award by the trial court of attorney's fees would amount to a finding by the trial court as to reasonable and necessary attorney's fees, without the benefit of evidence of any of the factors set out as relevant by the Texas Supreme Court in *Arthur*

*Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, (Tex.1997).

Proof of attorneys fees requires some type of basic proof, such as the itemization of what services a lawyer performed, the time required to perform them, and that the rate applied to the time required is reasonable. Even generalized statements as to a reasonable fee are not sufficient. *City of Laredo v. Montano*, 414 S.W.3d 731, 736-737 (Tex.2013). Therefore, the trial court cannot make a finding that the jury was required to make, and there is no evidence to support any finding.

No attorney's fees are recoverable in this case.

**2.**

**THERE IS NO EVIDENCE OF A BREACH OF ANY
CONTRACT BY DU VU WITH PLAINTIFFS AND
THE COURT SHOULD DISREGARD THE JURY FINDING
THAT SHE "BREACHED THE PARTIES' AGREEMENT"**

In order for the jury to find that defendant Dung Vu breached any contract with the plaintiffs there must exist proof of a valid contract between them, a breach by her of some term or provision of that agreement, some evidence of injury, and proof of damages arising from that injury. *Southwell v University of the Incarnate Word*, 974 S.W.2d 351, 354-355 (Tex. App.- San Antonio 1998, pet.den.); *Mead v. Johnson Group*, 615 S.W.2d 685, 687 (Tex. 1981).

The evidence in this case shows Dung Vu's involvement to only a very limited extent. She joined the other defendants in applying for and securing financing to purchase both of the chicken farms involved in this case. She executed documents to sell each of the two farms. She lived on the farm in Georgia, traveling back and forth to New Orleans to earn income to support her family. None of those acts form the basis for any of the plaintiffs' breach of contract claims; in fact, the plaintiffs benefitted from those acts.

There is no evidence that Dung Vu made any decision as to employment of and payment to any of the participants nor made decisions regarding the management of the farms. The evidence shows, and is uncontradicted, that the decision to charge compensation for services (20% of profits from the farm sales) was made by Andy Ngo; that the calculations of capital gains taxes and withholding of them from a distribution to the partners was made by Andy Ngo; that the calculations of depreciation and recapture of depreciation was made by Andy Ngo; that the decision to defer payment of capital gains taxes was made by Andy Ngo, with the assent of Phap Nguyen; the calculation of the amounts due each participant was made by Andy Ngo; and the distribution of funds to the participants was made by Andy Ngo.

A wife is not automatically liable for obligations incurred by her husband. Texas Family Code § 3.201(a) provides that a spouse is liable for the acts of his or her spouse only if the spouse acts as the agent for the other or the debt is for "necessaries." There is no evidence that the debt claimed by the plaintiffs was created because "necessaries" were provided to the family. There is no evidence

that defendant Phap Nguyen was acting as an agent for Dung Vu. She executed any necessary legal documents to buy and sell the chicken farms herself.

The Family Code § 3.201(c) explicitly states that a spouse is not automatically considered an agent because of the marriage relationship. Therefore, some evidence of an agency agreement was required: there is none in this case. Plaintiffs could have asked Dung Vu what her role was, what decisions she made, if she was consulted, etc. but did not do so. As a result, the trial record is devoid of any evidence that she committed any act or omission that caused injury to the plaintiffs.

Thus, there is no evidence to support the answer of the jury to Questions No. 2 and 5 that Du Vu breached any contract or agreement with the plaintiffs and the court should disregard those jury findings.

**3.**

### THERE IS NO EVIDENCE OF ANY BREACH OF CONTRACT BETWEEN THE PARTIES BY PHAP NGUYEN AND THE COURT SHOULD DISREGARD THE JURY FINDING THAT HE BREACHED THE PARTIES' AGREEMENT WITH PLAINTIFFS

There is no real conflict in the testimony of the parties to this suit as to what was agreed when they first agreed to pool money to purchase a chicken farm in Georgia. It is uncontested that the parties agreed to invest funds and to receive a share of the profits from operations and sale of the farm. It is uncontested that the parties agreed again to build a farm in Texas and share profits in proportion to their investments but there is a complete lack of proof of any other terms of an agreement.

*Was There Any Agreement that Ngo and Nguyen Would Not be Paid for Services?*

The central issue in this case is what, if anything, was agreed between the parties as to payment of any compensation to Andy Ngo and Phap Nguyen for their assumption of liability, loss of earnings, full-time devotion to the chicken farms, labor, and services. Plaintiffs assume there was an agreement not to be paid for those services. The evidence is that there was never any agreement that Ngo and Nguyen would not be paid. No witness ever testified that Ngo and Nguyen, the defendants ever represented at any time, that they would work for free. Therefore, any finding that they breached a contract by paying themselves 20% of profits is supported by no evidence at all.

There is no assumption that a party who provides valuable services will work without compensation. In fact, the assumption is that unless there is an express agreement for compensation that valuable services will be compensated. *Grynberg v. Gwaltney*, 1983 Tex. App. LEXIS 4467 (Tex.App.–Ft. Worth 1983, no writ-hist.); *Black Lake Pipe Line Company v. Union Construction*, 538 S.W.2d 80 (Tex.1976).

Since Plaintiffs failed to prove the existence of any express agreement that Defendants Ngo and Nguyen would work and provide services without compensation and, such an agreement cannot be implied, there is no evidence that a demand to be paid is a breach of any contract with the plaintiffs. Therefore, the court should disregard the answer of the jury to Questions No. 2 and 5.

### *Was There any Agreement that Plaintiff's profits Would Be Tax-Free?*

Again, the question is what did the parties agree to. A tax liability for either capital gains or ordinary income is created by the laws of the United States of America. There is no evidence that any of the defendants ever represented to any of the participants that any profit they realized would be tax-free. It cannot be a breach of a contract to insist on complying with the laws of the United States of America. In fact, it would be against public policy for parties to agree to not report taxable income.

Plaintiffs asked questions and attempted to raise doubt about any tax liability through cross-examination of defendant Ngo and Defendant's accounting expert, Mike Halls, but neither of those witnesses testified that there would be no tax liability. And the jury cannot find no tax liability based solely on the skepticism of the plaintiffs: there must be some testimony by one competent to testify that there would be in fact no such tax liability.

Therefore, the actions of defendants Ngo and Nguyen in withholding from any distribution of profits the amounts of expected federal taxes neither breaches neither an express agreement nor any implied agreement. The court should disregard the answer of the jury to Questions No. 2 and 5 and enter judgment that the plaintiffs take nothing on their claim for breach of contract.

### *Is There Evidence of Any Agreement to Pay a Distribution of Profits Solely to Dung Le?*

Dung Le also complains that the Defendants breached their contract with her by paying a portion of the distribution of profits to her former boyfriend and brother of Andy Ngo. The question is, where is the evidence that any of the defendants agreed to pay any distribution of profits solely to her?

The evidence at trial is uncontested that the initial conversations regarding investing were between Andy Ngo and his brother; that she and her boyfriend jointly made the investment; that a prior distribution of profits was divided between Dung Le and the brother; and that the brother's paycheck from working on the chicken farm was sent to Dung Le. There is no evidence of any express agreement that Dung Le would only be paid any amount distributed. The only evidence of an agreement shows one between Andy Ngo and his brother. There is no evidence that the investment was hers alone, other than a check drawn on her account, but that check was drawn when she and her boyfriend were living together and apparently sharing their income, and after they had represented that they were investing together.

There is no evidence from which the jury could have found that withholding funds from a distribution to the participants for federal capital gain and ordinary income taxes was a breach of the agreement between the parties, that payment of compensation to defendants Ngo and Nguyen

Unofficial Copy Office of Chris Daniel District Clerk

breached any agreement, and that dividing the division of profits between Dung Le and her boyfriend was a breach.. Therefore, the court should disregard the jury's answer to Questions No. 2 and 5 as to Phap V. Nguyen and should enter judgment denying any recovery against him on that ground.

## 4.

### THERE IS NO EVIDENCE OF ANY BREACH OF CONTRACT BETWEEN THE PARTIES BY ANDY NGO AND THE COURT SHOULD DISREGARD THE JURY FINDING THAT HE BREACHED THE PARTIES' AGREEMENT WITH PLAINTIFFS

In support of the Motion the Defendants adopt the same statement of the evidence and argument as set out in Paragraph 3 above.

The action of Defendant Ngo in withholding payment for compensation from any distribution of profits for services provided or for the amounts of expected federal taxes neither breaches an express agreement nor any implied agreement. The court should disregard the answer of the jury to Questions No. 2 and 5 and enter judgment that the plaintiffs take nothing on their claim for breach of contract.

There is no evidence from which the jury could have found that payment for services rendered and withholding funds from a distribution to the participants for federal capital gain and ordinary income taxes was a breach of the agreement between the parties, that payment of compensation to defendants Ngo and Nguyen breached any agreement, and that dividing the division of profits between Dung Le and her boyfriend was a breach.. Therefore, the court should disregard the jury's answer to Questions No. 2 and 5 as to Andy Ngo and should enter judgment denying any recovery against him on that ground.

## 5.

### THERE IS NO EVIDENCE OF THE EXISTENCE OF A PARTNERSHIP BETWEEN THE PARTIES AND THE COURT SHOULD DISREGARD THE PARTNERSHIP FINDING

The jury answered "yes" to Question No. 8, asking about a partnership, as to all the Defendants. In order for the court to disregard the jury finding of partnership it must be established that there is no evidence of a partnership. There is some evidence offered by the plaintiffs to support a claim of a partnership, but the question is, as a matter of law, is that evidence alone sufficient to support a partnership finding?

The elements to show existence of a partnership are:

1. The right to receive a share of profits of the business;

2. Expression of intent to be partners;

Unofficial Copy Office of Chris Daniel District Clerk

3. Participation or right to participate in control of the business;

4. Sharing or agreeing to share either losses of the business or liability to third parties; and

5. Contributing or agreeing to contribute money or property to the business.

*Ingram v. Deere*, 288 S.W.3d 886 (Tex.2009).

Defendants conceded that trial that the plaintiffs contributed money to the business and each had a right to share in the profits of the business. However, those factors alone do not support a finding that a partnership existed. And there is no evidence of any of the other factors.

There is no evidence that any of the parties ever referred to each other as partners. The court in *Ingram* noted that the best evidence of the intent of the parties to be partners is found in what they wrote, both to each other and to others, how they held themselves out to others, etc. In this case there is no evidence that any of the parties ever held themselves out to third parties as partners, executed any document as a "partner" with each other, or referred to themselves as partners in any document or correspondence. To the contrary, the evidence shows that the Defendants contracted with many third parties while representing they were the sole owners, with the knowledge of the plaintiffs.

There is likewise no evidence that the plaintiffs either participated in or had the right to participate in control of the business. The court in *Ingram* noted several ways in which that right to control would be manifested. It defines "control" as the right to make executive decisions. Some examples of control would be:

1. Access to the books and records of the business: there is no evidence that the plaintiffs ever had access to the books and records. The court in *Ingram* said party does not have control if he does not have access to the business' books.

2. The right to write checks on the business checking account: there is no evidence that the plaintiffs ever wrote a check over a period of several years.

3. The right to make decisions regarding the major property of the business, i.e., the chicken houses. The decisions to purchase land, hire a contractor, cuts into a grower's contract, sell each of the chicken farms, etc. were made solely by the defendants.

4. The right to hire and fire employees. The evidence shows no right to hire and fire by the plaintiffs, and even shows that defendants Ngo and Nguyen "fired" plaintiff Hoang from his job working in the chicken houses.

Likewise, there is no evidence of any agreement to share losses or assume liability to third parties for liabilities of the business. The only evidence in this case regarding sharing of losses is the testimony by Manh Hoang that he "would have shared in any losses." But there is no evidence that he ever offered to do so, was expected to do so, or that he ever became contractually bound in any way to pay any debt to a third party.

*Ingram* says no one factor is determinative in the existence of a partnership, but given the evidence that there was no evidence of intent to be partners, no joint management and control, and no agreement or obligation by the plaintiffs to assume losses, the evidence is simply insufficient as a matter of law to support the jury answer to Question No. 7, and the court should disregard the answer and enter judgment that the plaintiffs take nothing as partners.

6.

## THERE IS NO EVIDENCE OF ANY DAMAGES THAT RESULTED FROM A BREACH OF A PARTNERSHIP AGREEMENT BETWEEN THE PARTIES

It is unclear whether the damages found by the jury in response to Question No. 9 and 15 are the same as those found by the jury in their answer to Question No. 3 and 6. What is clear is that Plaintiffs only evidence of any damages arising from any breach of the alleged partnership was (1) the 20% of net profits deducted and (2) the amounts withheld to pay federal income taxes.

In order for the plaintiffs to recover for breach of a duty as a partner they have to show some damages that resulted from the breach of the partnership agreement. Plaintiffs offered no evidence of the value of a business enterprise as a continuing business. They could not because the business itself, a chicken farm, had been sold. No evidence exists of any goodwill. There is no partnership asset that was lost: all the assets were sold and the proceeds distributed.

The plaintiffs argued at trial that the defendants had some duty to continue to stay in business with them, to allow the plaintiffs to participate in any business venture they might enter into after the sale of the chicken farm. There is no such duty as a matter of law. *Salinas v. Rafati*, 948 S.W.2d 286 (Tex.1997).

Plaintiffs offered the amounts of capital gain and ordinary income taxes with no calculation of damages from any breach of a partnership agreement upon which the jury could find an amount of damages other than the portion of net profits paid to the defendants and capital gains withheld. Since there is no distinction between a breach of an "agreement" between the parties and the purported "partnership" between the parties, there is no legal basis for an award of separate damages for dissolution of the business or for any lost value of the business.

The court should disregard the jury answers to Questions 9 and 15 and render judgment as a matter of law that the plaintiffs take nothing on their claim for damages for breach of a partnership agreement.

WHEREFORE, DEFENDANTS request that the Motion be GRANTED in all respects and that a judgment be rendered that Plaintiffs take nothing from their suit.

Respectfully submitted,

_____
Tom Rorie
State Bar No. 17238000
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been served on opposing counsel this 23rd day of January, 2015, by facsimile and email, to-wit:

Mr. Scott K. Bui
Bui, Pham & Nhan, PLLC
FAX (713) 783-0787
email: sbui@buinhanlaw.com

_____
Tom Rorie

Unofficial Copy Office of Chris Daniel District Clerk

NO. 2011-72719

| | | |
|---|---|---|
| MANH HOANG and<br>DUNG LE | § | IN THE DISTRICT COURT OF |
| VS. | § | HARRIS COUNTY, TEXAS |
| PHAP V. NGUYEN,<br>ANDY NGO and<br>DUNG T. VU | § | 55TH JUDICIAL DISTRICT |

## MOTION FOR NEW TRIAL

TO THE HONORABLE COURT:

PHAP V. NGUYEN, ANDY NGO, and DUNG T. VU, Defendants, move this Court to set aside the judgment rendered on January 27, 2015, in the above styled and numbered case and to order a new trial, and in support of this motion show as follows:

1.

### INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY DUNG T. VU

In order for the jury to find that defendant Dung T. Vu breached any contract with the plaintiffs there must exist proof of a valid contract between them, a breach by her of some term or provision of that agreement, some evidence of injury, and proof of damages arising from that injury. *Southwell v. University of the Incarnate Word,* 974 S.W.2d 351, 354-355 (Tex.App.–San Antonio 1998, pet.den.); *Mead v. Johnson Group,* 615 S.W.2d 685, 687 (Tex. 1981).

The evidence in this case shows Dung T. Vu's involvement to only a very limited extent. She joined the other defendants in applying for and securing financing to purchase both of the

chicken farms involved in this case. She executed documents to sell each of the two farms. She lived on the farm in Georgia, traveling back and forth to New Orleans to earn income to support her family. None of those acts form the basis for any of the plaintiffs' breach of contract claims; in fact, the plaintiffs benefitted from those acts.

There is insufficient evidence that Dung T. Vu made any decision as to employment of and payment to any of the participants nor made decisions regarding the management of the farms. The evidence shows, and is uncontradicted, that the decision to charge compensation for services (20% of profits from the farm sales) was made by Andy Ngo; that the calculations of capital gains taxes and withholding of them from a distribution to the partners was made by Andy Ngo; that the calculations of depreciation and recapture of depreciation was made by Andy Ngo; that the decision to defer payment of capital gains taxes was made by Andy Ngo, with the assent of Phap Nguyen; the calculation of the amounts due each participant was made by Andy Ngo; and the distribution of funds to the participants was made by Andy Ngo. Therefore, there is insufficient evidence that any act or omission by Dung T. Vu could constitute a breach of any agreement.

2.

INSUFFICIENT EVIDENCE TO SHOW THAT DUNG T. VU
IS LIABLE FOR ACTS OR OMISSIONS OF
OTHER DEFENDANTS

A wife is not automatically liable for obligations incurred by her husband. TEXAS FAMILY CODE § 3.201(a) provides that a spouse is liable for the acts of his or her spouse only if the spouse acts as the agent for the other or the debt is for "necessaries." There is insufficient evidence that the debt claimed by the plaintiffs was created because "necessaries" were provided to the family. There

Unofficial Copy Office of Chris Daniel District Clerk

is insufficient evidence that defendant Phap V. Nguyen was acting as an agent for Dung T. Vu.

The TEXAS FAMILY CODE § 3.201(c) explicitly states that a spouse is not automatically considered an agent because of the marriage relationship. Therefore, some evidence of an agency agreement was required: there is none in this case. She executed any necessary legal documents to buy and sell the chicken farms herself. The trial record is devoid of any evidence that she herself committed any act or omission that caused injury to the plaintiffs.

Thus, there is insufficient evidence to support the answer of the jury to Questions No. 2 and No. 5 that Dung T. Vu breached a contract or agreement with the plaintiffs.

3.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY ANDY NGO BY PAYMENT FOR SERVICES RENDERED

There is no evidence that the parties ever agreed that defendant Andy Ngo would be or would not be compensated for his assumption of liability, loss of earnings, full-time devotion to the chicken farms, labor, and services. Plaintiffs assume there was an agreement not to be paid for those services due to that absence. But no evidence exists that the parties agreed that Ngo would not be paid for his assumption of debt and liability, time, and labor. There is no evidence that Ngo ever represented at any time that he would work for free. Therefore, the evidence is insufficient to show any breach of an agreement by his payment to himself for his services.

There is no assumption that a party who provides valuable services will work without compensation. In fact, the assumption is that unless there is an express agreement for compensation that valuable services will be compensated. *Grynberg v. Gwaltney*, 1983 Tex. App. LEXIS 4467

Page 3
Hoang vs. Nguyen
Mtn New Trial

(Tex.App.–Ft. Worth 1983, no writ hist.); *Black Lake Pipe Line Company v. Union Construction*, 538 S.W.2d 80 (Tex. 1976).

Plaintiffs failed to prove by sufficient evidence the existence of any agreement that Defendant Ngo would work and provide services without compensation. Such an agreement cannot be implied. There is insufficient evidence that his payment to himself for services rendered is a breach of any contract with the plaintiffs.

4.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY ANDY NGO BY WITHHOLDING FUNDS FOR PAYMENT OF TAXES

A tax liability for either capital gains or ordinary income is created by the laws of the United States of America. There is no evidence that any of the defendants ever represented to any of the participants that any profit they realized would be tax-free. As a matter of law it cannot be a breach of a contract to insist on complying with the laws of the United States of America.

There is insufficient evidence that the actions of defendant Ngo in withholding from any distribution of profits the amounts of expected federal taxes breaches any express or implied agreement between the parties.

5.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY ANDY NGO BY PAYING PART OF PROFITS TO TIEN NGO

Dung Le asserted that the defendants breached their contract with her by paying a portion of the distribution of profits from the sale of the chicken farm(s) to Tien Ngo, her former boyfriend (and

Page 4
Hoang vs. Nguyen
Mtn New Trial

brother of Andy Ngo). The evidence is insufficient to show that defendant Andy Ngo ever agreed, either expressly or by implication, to pay her and her alone a portion of the profits from the sale of the chicken farm(s).

The evidence at trial is <u>uncontested</u> that the initial conversations regarding investing were between Andy Ngo and Tien Ngo; that Dung Le and Andy Ngo never had any discussions at all; that Dung Le and Tien Ngo jointly made the investment; that a prior distribution of profits was divided between Dung Le and Tien Ngo; and that Tien Ngo's chicken farm paycheck from working on the chicken farm was sent to Dung Le.

There is insufficient evidence from which the jury could have found that dividing the funds distributed between Dung Le and Tien Ngo was a breach of any agreement.

6.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY PHAP V. NGUYEN BY PAYMENT FOR SERVICES RENDERED

There is no evidence that the parties ever agreed that defendant Phap V. Nguyen would be or would not be compensated for his assumption of liability, loss of earnings, full-time devotion to the chicken farms, labor, and services. Plaintiffs <u>assume</u> there was an agreement <u>not</u> to be paid for those services due to that absence. But no evidence exists that the parties agreed that Nguyen would <u>not</u> be paid for his assumption of debt and liability, time, and labor. There is no evidence that Nguyen ever represented at any time that he would work for free. Therefore, the evidence is insufficient to show any breach of an agreement by his payment to himself for his services.

There is no assumption that a party who provides valuable services will work without

compensation. In fact, the assumption is that unless there is an express agreement for compensation that valuable services <u>will be compensated</u>. *Grynberg v. Gwaltney*, 1983 Tex. App. LEXIS 4467 (Tex.App.–Ft. Worth 1983, no writ hist.); *Black Lake Pipe Line Company v. Union Construction*, 538 S.W.2d 80 (Tex. 1976).

Plaintiffs failed to prove by sufficient evidence the existence of any agreement that Defendant Nguyen would work and provide services without compensation. Such an agreement cannot be implied. There is insufficient evidence that his payment to himself for services rendered is a breach of any contract with the plaintiffs.

7.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY PHAP V. NGUYEN BY WITHHOLDING FUNDS FOR PAYMENT OF TAXES

A tax liability for either capital gains or ordinary income is created by the laws of the United States of America. There is no evidence that any of the defendants ever represented to any of the participants that any profit they realized would be tax-free. As a matter of law it cannot be a breach of a contract to insist on complying with the laws of the United States of America.

There is insufficient evidence that the actions of defendant Nguyen in withholding from any distribution of profits the amounts of expected federal taxes breaches any express or implied agreement between the parties.

8.

## INSUFFICIENT EVIDENCE OF ANY BREACH OF AGREEMENT BY PHAP V. NGUYEN BY PAYING PART OF PROFITS TO TIEN NGO

Dung Le asserted that the defendants breached their contract with her by paying a portion of the distribution of profits from the sale of the chicken farm(s) to Tien Ngo, her former boyfriend (and brother of Andy Ngo). The evidence is insufficient to show that defendant Phap V. Nguyen ever agreed, either expressly or by implication, to pay her and her alone a portion of the profits from the sale of the chicken farm(s).

The evidence at trial is <u>uncontested</u> that the initial conversations regarding investing were between Andy Ngo and Tien Ngo; that Dung Le and Phap V. Nguyen never had any discussion at all; that Dung Le and Tien Ngo jointly made the investment; that a prior distribution of profits was divided between Dung Le and Tien Ngo; and that Tien Ngo's chicken farm paycheck from working on the chicken farm was sent to Dung Le.

There is insufficient evidence from which the jury could have found that dividing the funds distributed between Dung Le and Tien Ngo was a breach of any agreement.

9.

## INSUFFICIENT EVIDENCE TO ESTABLISH EXISTENCE OF A PARTNERSHIP BETWEEN THE PARTIES

There is insufficient evidence to support the jury's answer to Question No. 8 finding the existence of a partnership. The evidence offered by the plaintiffs to support a claim of a partnership is insufficient as a matter of law to support a partnership finding.

Page 7
Hoang vs. Nguyen
Mtn New Trial

Unofficial Copy Office of Chris Daniel District Clerk

The elements to show existence of a partnership are:

1.  The right to receive a share of profits of the business;

2.  Expression of intent to be partners;

3.  Participation or right to participate in control of the business;

4.  Sharing or agreeing to share either losses of the business or liability to third parties; and

5.  Contributing or agreeing to contribute money or property to the business.

*Ingram v. Deere*, 288 S.W.3d 886 (Tex. 2009).

Defendants conceded at trial that the plaintiffs contributed money to the business and each had a right to share in the profits of the business. However, those factors alone do not support a finding that a partnership existed.

There is no evidence that any of the parties ever referred to each other as partners. The court in *Ingram* noted that the best evidence of the intent of the parties to be partners is found in what they wrote, both to each other and to others, how they held themselves out to others, etc. In this case there is no evidence that any of the parties ever held themselves out to third parties as partners, executed any document as a "partner," or referred to themselves as partners in any document or correspondence. To the contrary, the evidence shows that the defendants contracted with many third parties while representing they were the sole owners, with the knowledge of the plaintiffs.

There is likewise no evidence that the plaintiffs either participated in or had the right to participate in control of the business. The most important factors in determining the existence of a partnership are the sharing of profits and the control of the business. *Big Easy Cajun Corp. v. Dallas Galleria, Ltd.*, 293 S.W.3d 345 (Tex.App.–Dallas 2009, no writ hist.). The court in *Ingram* noted

several ways in which that right to control would be manifested. It defines "control" as the right to make executive decisions. Some examples of control would be:

1.  Access to the books and records of the business: there is no evidence that the plaintiffs ever had access to the books and records. The court in *Ingram* said party does not have control if he does not have access to the business' books.

2.  The right to write checks on the business checking account: there is no evidence that the plaintiffs ever wrote a check over a period of several years.

3.  The right to make decisions regarding the major property of the business, i.e. the chicken houses. The decisions to purchase land, hire a contractor, cuts into a grower's contract, sell each of the chicken farms, etc., were made solely by the defendants.

4.  The right to hire and fire employees. The evidence shows no right to hire and fire by the plaintiffs, and even shows that defendants Ngo and Nguyen "fired" plaintiff Hoang from his job working in the chicken houses.

There is essentially no evidence of any agreement to share losses or assume liability to third parties for liabilities of the business. The only evidence in this case regarding sharing of losses is the testimony by Manh Hoang that he "would have shared in any losses." But there is no evidence that he ever offered to do so, was expected to do so, or that he ever became contractually bound in any way to pay any debt to a third party.

No one factor is determinative in the existence of a partnership, but given the fact that there was no evidence of intent to be partners, no joint management and control, and no agreement or obligation by the plaintiffs to assume losses, the evidence is simply insufficient as a matter of law to support the jury answer to Question No. 7.

Page 9
Hoang vs. Nguyen
Mtn New Trial

10.

## INSUFFICIENT EVIDENCE OF DAMAGES
## FOR BREACH OF PARTNERSHIP AGREEMENT

Plaintiffs' only evidence of any damages arising from any breach of the alleged partnership was (1) the 20% of net profits deducted and paid to defendants Ngo and Nguyen, and (2) the amounts withheld to pay federal income taxes. That is not proof of damages for a breach of a partnership agreement.

In order for the plaintiffs to recover for breach of a duty as a partner they have to show some damages that resulted from the breach of the partnership agreement. Plaintiffs offered no evidence of the value of a business enterprise as a continuing business. They could not because the business itself, a chicken farm, had been sold. Plaintiffs offered no evidence of any goodwill or value of the alleged partnership as an entity. Plaintiffs offered no evidence that partnership assets were lost: all the assets were sold and the proceeds distributed.

Defendants had no duty to continue to stay in business with Plaintiffs or to allow the plaintiffs to participate in any business venture they might enter into after the sale of the chicken farm. There is no such duty as a matter of law. *Salinas v. Rafati*, 948 S.W.2d 286 (Tex. 1997).

Plaintiffs offered no calculation of damages from any breach of a partnership agreement upon which the jury could find any amount of damages. There is no distinction between the damages the jury found for breach of an agreement between the parties and the evidence of damages for breach of partnership. The evidence is insufficient to support any award of damages for breach of partnership.

Page 10
Hoang vs. Nguyen
Mtn New Trial

## THE INTEREST AWARDED ON THE DAMAGES
## FOUND BY THE JURY IS COMPUTED INCORRECTLY

One of the primary purposes of awarding pre-judgment interest to a plaintiff who prevails is to provide a disincentive to a defendant to delay the trial and disposition of case.

In this case it was the plaintiffs who failed to promptly set the case for trial. In fact, on June 6, 2014, the Court dismissed the case for want of prosecution. The case was reinstated by order dated July 1, 2014, upon motion by the plaintiffs.

The Texas Supreme Court discussed the purpose of pre-judgment interest in *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507 (Tex. 1996). It referred to principles of "equity" and mentioned providing disincentives for <u>defendants</u> to delay. The Court noted that normally when there is a "tolling agreement" that the accrual of interest is also tolled. In this case it was the plaintiffs who caused delay, but they seek to recover interest that accrued during the period they delayed. A party that causes the delay should not benefit from the accrual of interest; therefore, Defendants contend that the Court should modify the award of pre-judgment interest accordingly.

Pre-judgment interest should be disallowed after June 6, 2014, the date on which the Court dismissed the suit due to the failure of the plaintiffs to pursue it diligently. By that date the Court itself has sufficient evidence of a failure by the plaintiffs to timely prosecute their suit. In the alternative, interest from June 6, 2014, until July 1, 2014, should be disallowed for during that period of time the case had been dismissed.

WHEREFORE, Defendants pray the Court grant this Motion for New Trial and the relief requested.

Page 11
Hoang vs. Nguyen
Mtn New Trial

Respectfully submitted,

_Tom Rorie_

Tom Rorie
State Bar No. 17238000
210 North Street
Nacogdoches, TX 75961
(936) 559-1188
FAX (936) 559-0099
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been served on opposing counsel this 25th day of February, 2015, by facsimile and email, to-wit:

Mr. Scott K. Bui
Bui, Pham & Nhan, PLLC
FAX (713) 783-0787
email: sbui@buinhanlaw.com

_Tom Rorie_

Tom Rorie

Unofficial Copy Office of Chris Daniel District Clerk